# BUTLER *v.* FRAZEE.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 36. Argued December 3, 1908.—Decided December 21, 1908.

The common-law rule of assumption of known risk by the employe has never been modified by statute in the District of Columbia, and even if hardship results the court must enforce the rule.

One understanding the condition of machinery and dangers arising therefrom, or who is capable of so doing, and voluntarily, in the course of employment, exposes himself thereto, assumes the risk thereof and if injury results cannot recover against his employer.

Although the plaintiff, if of full age and understanding, may testify to the contrary, where the elements and combination out of which the danger arises are so visible and have been of such long standing that the dangers are obvious to all, the question is one of law for the court and the judge should instruct the jury that a verdict for plaintiff cannot be sustained.

In this case, *held* that an employé in a laundry, who had been employed in laundries for two years and was familiar with the machinery used therein, could not recover for injuries received by a machine on which she had been working for three months, and the imperfections, if any, of which she did not at any time report to her employer.

25 App. D. C. 392, affirmed.

THE facts are stated in the opinion.

·*Mr. John C. Gittings*, with whom *Mr. Justin Morrill Chamberlin* was on the brief, for plaintiff in error:

· The master is under obligation not to expose servants, when conducting the master's business, to perils or hazards against which they may be guarded by proper diligence on the part of the master. The defendant in error, under the implied contract between employer and employe, was negligent in failing to so adjust the guard that it would prevent plaintiff's hands from coming into contact with the dangerous machinery. *Hough's Case*, 100 U. S. 213; *McDaniels' Case*, 107 U. S. 454; *Herbert's Case*, 116 U. S. 642; *Archibald's Case*, 170 U. S. 665; *McDade's Case*, 191 U. S. 64.

Although plaintiff may have known of the defect in the machinery, this will not defeat her recovery unless she knew that the defect rendered the thing absolutely dangerous. *Hayzel* v. *Railway Co.*, 19 App. D. C. 372.

"The master should inform the servant of the danger, and it is not enough that the servant knew or ought to have known the actual character and condition of the defective instrumentalities furnished for his use. He must also have understood, or by means of ordinary observation ought to have understood, the risks to which he was exposed by their use." *Russel* v. *Railway Co.*, 32 Minnesota, 234.

That this guard, remaining at the height of one and one-half inches from the feed board, exposed plaintiff to an unnecessary danger is perfectly obvious from the fact of the accident. *Choctaw R. R. Co.* v. *McDade*, 191 U. S. 64; *Indermaur* v. *Dame*, L. R. 1 C. P. 288; *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 386.

It cannot be fairly said as a matter of law, from the facts in this case, that the danger incident to having the finger guard one and one-half inches in height was "something which inheres in the thing itself, which is a matter of necessity and cannot be obviated. *Pikesville R. R. Co.* v. *Russell*, 88 Maryland, 571 See also *Wabash Ry. Co.* v. *McDaniels*, 107 U. S. 457; *David* v

*Garrett,* 6 Bingham, 724; *R. R. Co.* v. *Reaney,* 42 Maryland, 137; *Stergis* v. *Kuntz,* 165 Pa. St. 358; *Fronk* v. *Evans' Steam Laundry Co.,* 70 Nebraska, 75; *Stager* v. *Troy Laundry Co.,* 38 Oregon, 480.

*Mr. Leonard J. Mather,* with whom *Mr. Charles A. Keigwin* was on the brief, for defendant in error:

The defects complained of were open and obvious to the plaintiff in error, who, giving no notice thereof, thereby assumed the risk of using the defective machine. *Medairy Case,* 86 Maryland, 168; *Hayzel Case,* 19 App. D. C. 369; *Ciraack* v. *Merchants' Woolen Co.,* 6 L. R. A. 733; *Connolly* v. *Eldredge,* 160 Massachusetts, 560; *Ry. Co.* v. *Archibald,* 170 U. S. 672; *Hough's Case,* 100 U. S. 224; *Tuttle* v. *Ry.,* 122 U. S. 189; *Way* v. *Railway,* 40 Iowa, 341; *Murphy* v. *Rockwell Eng. Co.,* 70 N. J. L. 374; *Schofield* v. *Ry. Co.,* 114 U. S. 615; *Kohn* v. *McNulta,* 147 U. S. 271; *Dist. of Columbia* v. *McElligott,* 117 U. S. 621; *Richardson* v. *Cooper,* 88 Illinois, 270; Shearman and Redfield's Negligence, § 209*a*.

Even where the master has neglected to provide safeguards required by statute, the servant cannot recover if he used the machine in its unprotected condition and could see the danger. *Krusley* v. *Pratt,* 148 N. Y. 372; *Keenan* v. *Edison Co.,* 159 Massachusetts, 379.

The rule is well stated in *Hickey* v. *Taafe,* 105 N. Y. 26. See, also, *Ogley* v. *Miles,* 139 N. Y. 458; *Caudet* v. *Stansfield,* 182 Massachusetts, 451; *Hoyle* v. *Excelsior Steam Laundry Co.,* 95 Georgia, 34; *Blom* v. *Yellowstone Park Assn.,* 86 Minnesota, 237; *Keenan* v. *Waters,* 181 Pa. St. 247; *Jones* v. *Roberts,* 57 Ill. App. 56; *Hanson* v. *Hammell,* 107 Iowa, 171; *Crowley* v. *Pacific Mills,* 148 Massachusetts, 228; *Greef Brothers* v. *Brown,* 7 Kans. App. 394.

MR. JUSTICE MOODY delivered the opinion of the court.

The plaintiff in error brought an action against the defend-

ant in error in the Supreme Court of the District of Columbia, in which she sought to recover damages for injuries suffered by her while in the defendant's employ. The injuries were incurred while the defendant was operating a mangle in the defendant's steam laundry. The function of the machine was to iron and dry clothes by drawing them between a cylinder and a series of rollers. The cylinder was of steel, four feet in diameter and eight feet long, and heated by steam. Above and in contact with it were five rollers. When in motion the cylinder and the rollers revolved inwardly. In front of the cylinder and closely fitted to it was a feed board, twelve to fifteen inches wide and eight feet long. It was the duty of the operator of the machine to spread the damp article to be ironed upon the feed board and push it forward until it touched the cylinder, by whose motion it was drawn upward to the point of engagement between the cylinder and the first roller, thereby being drawn through between the cylinder and the rollers. For the safety of the operator the machine was equipped with a finger guard, which was a bar of steel eight feet long, three inches wide and one-eighth of an inch thick, extending from side to side of the machine, and about four inches distant from the revolving cylinder. The guard was painted red. It was adjustable and could be set at a height above the feed board of from one-fourth of an inch to four inches, depending upon the thickness of the clothes to be ironed. On this mangle the guard had always been adjusted at a height of one and one-half inches above the feed board. The various parts of the machine described and their relation to each other and the mode of operation were in plain view of the operator. The plaintiff was twenty-two years of age, apparently of full intelligence, and before entering the employ of the defendant had had two years' experience in the operation of mangles in other establishments. She testified that those mangles were equipped with finger guards, which prevented the operator's hands from coming into contact with the steam cylinder, and that she had never known of any injury happening to an operator by con-

tact with the cylinder. She received no instructions or warning of any danger. When she was set to work upon the mangle in October, 1902, the feed board was loose, thereby permitting clothing occasionally to drop between its edge and the steam cylinder. This condition continued unchanged until the time of the plaintiff's injury, and it was not reported or complained of by her. In the following December she was injured. The only testimony as to how the injury occurred was given by the plaintiff herself, and was stated in the bill of exceptions as follows:

"A. Why, the morning of the accident nearly every piece we put in the mangle, Miss Cumberland's end would go in before mine and I would have to push, and my hand caught on. . . . A. The morning of the accident nearly every piece would catch on Sidney's side before it would catch on mine; and the table cloth would take my hand right on up with it. It dropped down between the board and the cylinder, and when it caught, it carried my hand right on up with it. . . . A. Well, the linen would drop down between the board and the cylinder and you had to push it up. Q. Do you mean us to understand that you put your hand deliberately inside this finger guard and down into the space between the feed board and the cylinder? A. No, sir. Q. How did the linen drop? A. The linen instead of going in would drop down between the board and the cylinder and you would push it up, and the young lady working on the other side, hers would catch before mine. Q. You had to get hold of the end in some way to push it up? A. No, sir; you had to push it up the feed board. Q. If the edge of the linen you were feeding had dropped down between the feed board and the cylinder, how could you push it up? A. You could push it up and it would come down wrinkled. Q. If it had dropped down between the feed board and the cylinder, how could you push it up? A. It dropped down between the feed board and the cylinder, and when you pushed it up and it came out of the mangle it would come out wrinkled. Q. You did not hold the table cloth as it fed into

the machine? A. Yes, I had hold of the table cloth. Q. You pushed the table cloth over the feed board; but you could not catch hold of it, as a matter of fact? A. I had hold of the table cloth and was pushing it up and it dropped. And this day it was worse; every piece we put in it dropped down and we had to push it up; and as I pushed it up in some way or other it took my hand with it. Q. You say it was getting worse? A. Yes. We had to sprinkle the clothes every day, and this day we had to sprinkle the clothes more than ever.. Q. And that is the only day you put your hand inside the finger guard? A. Yes. Q. Why did you put your hand inside then? A. I didn't put my hand inside. The table cloth pulled it in. My hand was on the table cloth pushing it up, and the table cloth caught and it caught my hand with it. Q. On this particular occasion even you didn't push your hand inside the finger guard? A. No, sir; I didn't put my hand under the finger guard until the table cloth pulled it under. Q. So the table cloth had hold of your hand before your hand had gotten past the finger guard? A. The table cloth dropped and I gave it another push to make it catch, and after it dropped it caught it on the cylinder and carried my hand right with it. Q. So that your hand had gone past the finger guard before the table cloth caught it and carried it into the mangle? A. The table cloth took my hand right along with it. Q. What I want to find out is the exact time that this table cloth became wrapped around your hand in such a way as to take it into that mangle? A. The table cloth dropped. Sidney's end had gone in and my end had dropped, and I pushed it and it caught. As soon as the table cloth—it caught, and after it caught in some way it took my hand right up with it. Q. Where did it drop? Between the feed board and the cylinder? A. Between the feed board and the cylinder. Q. And it was not until after it dropped that your hand was caught? A. It dropped between the feed board and the cylinder, and I had my hand on the feed board to make it catch, and my hand caught and went right up with it."

The plaintiff offered the testimony of expert witnesses, who said that no kind of laundry work required the finger guard to be more than one-half an inch above the feed board. Apart from the extent of the injuries, this was all the evidence tending to sustain plaintiff's cause of action. The presiding judge directed a verdict to be returned for the defendant. Upon exceptions this ruling was sustained by the Court of Appeals, and the case was brought here by writ of error.

The evidence tended to show that in one respect at least the machine operated by the plaintiff was out of repair. The feed board was loose, thereby permitting the fabric to be ironed sometimes to drop between it and the steam cylinder. How far this was a cause contributing to the injury does not clearly appear, and at the bar it was not relied upon as the cause of the plaintiff's injury. This was the prudent attitude, because the ill-repair of the machine in this respect, and the effect upon its operation, were in existence from the first and well known to the plaintiff, and she failed to report or complain of the defect to her employer. *Washington. &c. Railroad Co.* v. *McDade,* 135 U. S. 554, 570. The single ground upon which the plaintiff's right to recover was rested was that the guard rail was adjusted at an excessive height, so that it would permit the plaintiff's hand to be drawn between it and the feed board up to the point of engagement between the revolving cylinder and rollers. The judgment of the court below went against the plaintiff, upon the theory that she assumed the risk of this danger, and that is the question to be considered. One who understands and appreciates the permanent conditions of machinery, premises and the like, and the danger which arises therefrom, or by the reasonable use of his senses, having in view his age, intelligence and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk. The rule is too well settled to warrant an

extensive discussion of it or an attempt to analyze the different reasons upon which it has been held to be justified. The rule of assumption of risk has been thought by many a hard one when applied to the complicated conditions of modern industry, so largely conducted by the aid of machinery propelled by irresistible and merciless mechanical power, and the criticism frequently has been made that the imperative need of employment leaves to the workman no real freedom of choice, such as the rule assumes. That these considerations have had an influence is shown by the notorious unwillingness of juries to apply the rule, and by the legislative modifications of it which, from time to time, have been made, as, for instance, by Congress in the Safety Appliance Law. *Schlemmer* v. *Buffalo, Rochester &c. Ry. Co.*, 205 U. S. 1. But the common law in this regard has not been modified in the District of Columbia, and we have no other duty than to enforce it. No question has been made in the case at bar that the rule prevails and is relevant to the facts of this case. The contention, however, is that as the plaintiff testified in substance that she did not know and appreciate the danger which she was encountering, that testimony, with the other facts in the case, raised an issue for the jury, and that it could not be said, as matter of law, that the risk had been assumed. This contention is sustained by a well-considered case. *Stager* v. *Troy Laundry Co.*, 38 Oregon, 480. See *Fronk* v. *Evans' Steam City Laundry Co.*, 70 Nebraska, 75.

Where the elements and combination out of which the danger arises are visible it cannot always be said that the danger itself is so apparent that the employé must be held, as matter of law, to understand, appreciate and assume the risk of it. *Texas & Pacific Ry. Co.* v. *Swearingen*, 196 U. S. 51; *Fitzgerald* v. *Connecticut River Paper Co.*, 155 Massachusetts, 155. The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But

where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly. *Patton* v. *Texas & Pacific Railway Co.*, 179 U. S. 658, and cases there cited. The case at bar falls within this class.

The plaintiff was a person of mature years, intelligent and of adequate experience. She had worked for some months upon this particular machine and during that time it was always in exactly the same condition in which it was upon the day of the injury. The elements out of which the danger arose were plainly visible to her. The employer had no duty, statutory or otherwise, to use a rail to guard against so obvious a danger as that arising out of two cylinders in contact with each other and seen to be revolving inwardly. *Hickey* v. *Taafe*, 105 N. Y. 26. We see nothing in the manner of the adjustment of the guard rail which constituted an allurement or was calculated to blind the plaintiff to the danger. The adjustment of the parts of the machine was continually before her eyes. The danger of being drawn between the cylinder and the rollers by contact with the cylinder was illustrated to her every minute of the day by the drawing in of the clothes to be ironed by contact with the revolving cylinder. The distance between the guard rail and the feed board was constant, and its relation to the thickness of her hand was apparent. She must have understood that if her hand became inextricably entangled with the clothes, as seems from the rather vague testimony of the plaintiff was the case here, it would be drawn between the cylinder and receive the injuries which unhappily occurred.

We think that it must be said, as matter of law, that she voluntarily assumed the risk of the danger. *Tuttle* v. *Milwaukee Railway*, 122 U. S. 189; *Crowley* v. *Pacific Mills*, 148 Massachusetts, 228; *Gleason* v. *Railroad*, 159 Massachusetts, 68; *Connolly* v. *Eldredge*, 160 Massachusetts, 566; *Lemoine* v. *Aldrich*, 177 Massachusetts, 89; *Burke* v. *Davis*, 191 Massachusetts. 20.

*Judgment affirmed.*