McCLAREN v. WEBER BROS. SHOE CO.

(Circuit Court of Appeals, First Circuit.   January 19, 1909.)

No. 775.

1. EVIDENCE (§ 527*)—OPINION EVIDENCE.
  In an action for injuries to a servant by the breaking of a sewing machine needle in a shoe factory, an expert's opinion that the breaking was caused by the needle being struck by a loose looper-lever in consequence of the worn condition of the guide was to go to the jury on plaintiff's claim that the breaking of the needle resulted from the defective condition of the machine.
  [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2334; Dec. Dig. § 527.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—NATURAL CONSEQUENCE—ANTICIPATION.
  In an action for injuries to a servant by the breaking of a needle in a defective sewing machine in a shoe factory, evidence held to require submission to the jury of the question whether the injury was the natural consequence of the defective machine, and whether the defect was one

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as to which defendant had reason to anticipate the possibilities to such an extent that it was bound to guard against them.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—REPAIRS—ASSURANCES.

Plaintiff was employed to operate a sewing machine in a shoe factory, which having become defective, defendant employed an expert to repair it. After considerable time he reported that the machine had a worn needle guide, and called plaintiff's attention to the fact stating that "it was all right if it didn't give plaintiff any trouble"; that most operators preferred a worn guide, nothing being said concerning the fact that the looper-lever of the machine was loose. *Held,* that it was for the jury to determine whether the expert's statement was a sufficient assurance to plaintiff that the machine was safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1084, 1085; Dec. Dig. § 288.*]

4. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—DEFECTIVE MACHINE—PROMISE TO REPAIR.

Where a master expressly promised to repair a defect in a machine, and after attempting to do so the operator's foreman and expert assured him that the machine was "O. K.," it was for the jury to determine whether the operator was entitled to recover for an injury occurring on the succeeding day due to a defect in the machine. Hough v. Railroad Company, 100 U. S. 213, 225, 25 L. Ed. 612, applied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1084, 1085; Dec. Dig. § 288.*]

5. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—REPAIRS.

Where an employer, who is not a manufacturer of machines, contracts with the manufacturer or other mechanician whose business it is to manufacture or repair such machines, and who has a proper reputation in reference thereto, to use proper and reasonable efforts in putting the machine in proper order, the employer may not be liable for injuries in consequence of the oversight or neglect of the person so employed. Railroad Co. v. Elliott, 149 U. S. 266, 272, 13 Sup. Ct. 837, 37 L. Ed. 728, applied.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Alexander Lincoln (Whipple, Sears & Ogden and Sherman Whipple, on the brief), for plaintiff in error.

Francis Peabody, Jr. (Peabody & Arnold, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and DODGE, District Judge.

PUTNAM, Circuit Judge. In this case the plaintiff in the court of first instance is also the plaintiff in error. Therefore we will speak of the two parties as the plaintiff and the defendant. This suit arose out of the same injury by the same machine involved in the writ of error in McClaren v. United Shoe Machinery Company (No. 736) 166 Fed. 712, where an opinion was passed down simultaneously with this; and some matters herein are explained there. The essential difference is that Weber Bros. Shoe Company was the employer of the plaintiff,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

using the machine leased by it from the United Shoe Machinery Company, as explained in the other suit. The case was tried to a jury, and the learned judge of the Circuit Court directed a verdict for the defendant, whereupon the plaintiff took out this writ of error.

The declaration contains three counts. The second and third counts were under the Massachusetts employers' liability statutes, alleging defects in the defendant's machinery and the negligence of the superintendent. The first count was at common law. Under the circumstances, the second count is immaterial; and, so far as the third count is concerned, the verdict was properly directed for the defendant, because, if there was any negligence, it was on the part of the corporation itself in furnishing a defective machine. The foreman, or superintendent, in charge of the machine and its repairs, seems to have been especially diligent in endeavoring to remedy the defects.

The other count shows that the machine was a stitching machine which the plaintiff was operating, and that, while so engaged, a needle broke and a piece thereof penetrated his eye. It states that the plaintiff was injured "by reason of the negligence of the defendant in providing and maintaining an insufficient, improper, defective, and dangerous machine." It fails, however, to point out in what way the defective condition resulted in breaking the needle, or, in fact, that it did cause its breaking. With proper allegations on this point we would understand the case, and apply the testimony, with more facility than we now can. Nevertheless, the defendant seems to have been content with the pleadings, and we must work them out as best we can.

At the trial, the plaintiff claimed to have no knowledge himself of what caused the needle to break, this being a part of his major proposition that he had no reason to anticipate that it would break; but it seems to be now claimed that the breaking was caused by the looseness of the looper-lever, together with the worn condition of the needle guide. A witness who was undoubtedly sufficiently expert in this matter, although he was only an experienced operator of similar machines, gave it as his opinion that it was caused by the striking of the needle by the loose looper-lever, in consequence of the worn condition of the guide, because the needle was not accurately directed, and so was allowed to strike in some other place than the hole which the awl provided for it; and that thus it was made to bind in coming back, so that it finally broke and flew off. This testimony was given in response to a hypothetical question, as to which the record states that it was answered under the defendant's exception; but the ground of the exception is not given. To our mind, the testimony was proper and relevant, and tended to supply what was lacking in the pleadings, and to show whether the breaking of the needle was caused by the defective condition of the machine. Therefore, we think there was enough to go to the jury on the proposition that this defective condition was the proximate cause of the injury.

The next questions are as follows: First, was there enough to go to the jury on the question whether there was negligence on the part of the defendant in reference to the defective condition of the machine? Second, was that defect of such a character that there was sufficient

to go to the jury on the question whether the injury to the plaintiff was a natural consequence thereof within the meaning of the law? And, third, was the defect one as to which the defendant had reason to anticipate the possibilities to such an extent that it was bound to guard against them? So far as the first interrogatory is concerned, we are of the opinion that there was sufficient evidence of negligence on the part of the defendant to go to the jury. There was proof that the machine in question was made up of old parts of other machines. There was also proof that, after the plaintiff commenced working on it, it broke down twice, followed by attempted repairs made under the direction of the plaintiff's foreman, which repairs were followed in each case by another breaking down after running a very short time.

The testimony of the expert to which we have referred embraced, also, sufficient to require that the second and third interrogatories should be answered affirmatively. The jury might have inferred that, as the probabilities with regard to the effect of the defect in the mechanism were apparent to him, they were, therefore, also apparent to the defendant, engaged as it was in the business of operating many of these machines.

At this point it is necessary to take up the story somewhat further. It appeared that, after the two attempts at putting the machine in order, the plaintiff told the defendant's foreman that he would have to leave because he could not afford to hang around longer. Thereupon the foreman told him to wait; that he would have the machine put in order, "and that everything would be 'O. K.'" Then there came a mechanic from the Goodyear Company, so called, by which was meant the corporation which constructed this class of machines, and, therefore, well to be assumed to be fully competent to repair. The plaintiff testified that he, this mechanic, "overhauled the machine, and seemed to take a good deal of time upon it." He worked on it all of one day and the morning of the next day. He then reported that it had a worn needle guide, and called the plaintiff's attention to this fact; but, as the plaintiff further testified, he said: "It was all right if it didn't give me any trouble; that most operators preferred a worn needle guide." Nothing was said at this point about the loose looper-lever. The effect of this omission was for the jury. It is apparent that by this the Goodyear Company's representative intended to assure the plaintiff that the machine was safe, although it might bother him.

The plaintiff further testified that he then resumed the use of the machine, but that it worked the same as previously, though not quite so badly. The next day the accident happened to his eye. It was plain from the needle itself that it broke off, not at the barb, but at the stock, having first been bent. There was also evidence that for the barbs of needles to break off was a common occurrence, but that for needles to break as this one broke—that is, at the stock—and to be bent, was a rare thing.

The plaintiff complains that some manufacturers use a guard to protect against the breaking of needles, while this machine had no guard; but he knew this. The Circuit Court was entitled to assume, and we must assume, that the plaintiff had sufficient experience to have

accepted the risk of so ordinary a thing as the breaking of the barb, which, independently of any evidence, and to any ordinary mind, might well have been expected to have occurred frequently. In the same way, that there was no guard the plaintiff knew, and this was so manifest that he must be assumed to have taken the risk of any ordinary break which a guard would have provided against.

The breakage in this case, however, was not an ordinary one, and the case does not clearly show whether the consequences of such a breakage, and the hazards involved therein, are so essentially different from the ordinary breakage of a barb that, while an operator might well assume the risk of the latter, he cannot be held to assume the risk of the former. The injury in this case shows that the results involved in a breakage like that which occurred here may be of a very serious character; but the record does not go beyond that on this point. Therefore, whether or not, on the whole, the plaintiff can be held to have assumed all the risk, was for the jury under proper instructions. In this connection, it is not to be forgotten that Hough v. Railroad Company, 100 U. S. 213, 225, 25 L. Ed. 612, clearly affirms the rule to the effect that, where a master expressly promises to repair a defect, the servant can recover for an injury caused thereby within such reasonable time thereafter as the circumstances would justify. This modifying rule is discussed in Railroad Company v. Babcock, 154 U. S. 190, 200, 14 Sup. Ct. 978, 38 L. Ed. 958, and by us in McPeck v. Railroad Company, 79 Fed. 590, 593, 25 C. C. A. 110. There we held that the lapse of 20 days, under the circumstances, rendered it inapplicable. This modification does not bear strictly on the question of diligence or negligence on one side or the other; but it sometimes absolutely changes the burden of the assumption of the risk for a reasonable time from the shoulders of the servant to the shoulders of the master. Here, the foreman gave such assurances that the machinery would be "O. K.," followed by such qualified assurance on the part of the mechanic who made the repairs, that, so far as this record is concerned, and on this issue, this rule of law must be accepted as one which the plaintiff was entitled to take the benefit of under proper instructions and limitations.

Moreover, the court must not overlook the well-known rule referred to by Mr. Justice Moody in behalf of the Supreme Court in Butler v. Frazee (in an opinion passed down on December 21, 1908) 211 U. S. 466, 29 Sup. Ct. 138, 53 L. Ed. ——. There, the learned justice observes that:

"Where the elements in combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employé must be held, as matter of law, to understand, appreciate, and assume the risk of it."

The learned justice makes some further observations on this topic, and with reference to cases where the dangers are apparent to common observation, which should be examined in connection with this case. It is to be borne in mind that the mechanic from the Goodyear Company did not foresee the result which occurred, so that the plaintiff, of much less experience, might, perhaps, also have been excused in reference thereto.

At the common law, the employer does not guarantee the safety of a machine, yet it rests on him, not merely to use reasonable care to keep the machine in order, but to see to it that somebody who had the proper skill used reasonable care in that direction. This rule is stated by the Supreme Court several times, but finally in Railroad Company v. Mackey, 157 U. S. 72, 87, 15 Sup. Ct. 491, 39 L. Ed. 624. On the other hand, it is settled that if, under these circumstances, an employer who is not himself a manufacturer of machines, and not assumed to know how to always repair them, or to have any person in his employment who possesses this knowledge, contracts with a manufacturer, or other mechanician, whose business it is to manufacture or repair such machines, as the case may be, and who has a proper reputation in reference thereto, to use proper and reasonable efforts in building, or in putting the machine in order, the employer may thus have done all required of him, even though an injury followed in consequence of the oversight or neglect of the manufacturer or mechanician so employed. In other words, ordinarily, where work of this kind is done by a skilled independent contractor, the law holds that the employer, under proper circumstances and conditions, satisfies his obligation to secure reasonable care in putting machinery in order. This is the principle of the rule given in Railroad Company v. Elliott, 149 U. S. 266, 272, 13 Sup. Ct. 837, 37 L. Ed. 728, and recognized even to a broader extent in Malone v. Laskey (1907), 2 K. B. 141, 153.

Without citing further authorities, it is therefore true that, if this defendant had had the machine in question repaired by the corporation for which the words "Goodyear Company" stood, and had directed thorough repairs, and had been assured by that corporation, or its agents, that the repairs were sufficient, this might have answered the plaintiff's case. So far as this is concerned, it must be admitted that our impression is strong that the Circuit Court reached a conclusion which foreshadows what must be the ultimate result. Nevertheless, as this proposition is in response to the plaintiff, and a matter of defense, the burden was on the defendant; and we think it was hardly met to such an extent as would have justified the court in taking the case from the jury in reference thereto. It does not appear what the terms of the employment of the Goodyear Company were, whether they were simply to patch up the machine, or whether with instructions to put it in safe and thorough condition. We do not think that the record on this point is so definite as to establish a complete defense.

It must be understood that, beyond the propositions with reference to which we have expressed ourselves positively, we have no impressions on any of the points we have discussed, except that the record leaves them so close that, on a new trial, very slight circumstances might justify the court in repeating its direction to the jury to find a verdict for the defendant. Therefore, except so far as we have thus expressed ourselves positively, we are not able to forecast the future of the proceeding, or to suggest with any degree of safety in any positive form the rulings which it may require from the court. All we can say is that, on the present record, we think the case should have gone to the jury; so that there must be a new trial.

The judgment of the Circuit Court is reversed, and the verdict set aside, and the case remanded to that court for further proceedings not inconsistent with the opinion passed down the 19th day of January, 1909; and the plaintiff in error recovers his costs of appeal.