GARNSLEY *v.* BOYCE.

1. MASTER AND SERVANT—AMENDMENTS—PLEADING.

A declaration which charges that a guard on a mangle had been removed, may be amended by adding a new count which alleges that the guard had become defective and out of repair, whereby plaintiff was injured.

2. SAME — DEFECTIVE MACHINERY — WARNING AND INSTRUCTING SERVANT—ASSUMPTION OF RISK.

The risk of a loose and insufficient guard is not assumed by a servant who is set to work on the defective mangle without any warning of the danger, which the evidence tended to show was not obvious.

Error to Calhoun; North, J. Submitted June 11, 1909. (Docket No. 68.) Decided July 15, 1909.

Case by Mina E. Garnsley against Esther L. Boyce for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Arthur B. Williams* and *Howard Green*, for appellant.

*Stewart & Jacobs* and *F. A. Kulp*, for appellee.

Defendant owned and carried on a laundry. Plaintiff, a woman 28 years of age, was her employé. On June 12, 1905, plaintiff was feeding a mangle, *i. e.*, was running butchers' aprons through it, heavily saturated with starch. Her hand in some way got between the rollers, and was so badly lacerated that amputation of a large part of it became necessary. She instituted this suit to recover damages, alleging negligence on the part of the defendant.

The declaration contains two counts. The first alleges the duty of the defendant to give plaintiff instructions as to the use of the machine and failure to so do, and negli-

gence in removing the guard or protector from said machine. In the second count she alleges that said machine was built or constructed with a guard, that it had been removed, and that she had no warning of the danger of its unsafe condition because of the absence or displacement of said guard. It appeared from her own testimony upon the trial there was a guard, but that it was in an unsafe and defective condition.

After plaintiff had rested her case, defendant's counsel moved the court to direct a verdict for the defendant on the ground of a fatal variance between the declaration and the proofs. This motion was denied. The defendant then introduced her proofs, and, when both parties had rested, counsel for defendant again moved the court to direct a verdict for the same reason, and also for the reason that plaintiff assumed the risk; the danger being obvious. This motion was denied, and the case submitted to the jury, who rendered a substantial verdict for the plaintiff.

After the jury had retired, plaintiff's counsel asked leave to amend the declaration by inserting a third count as follows:

" Plaintiff further alleges that said machine had, at the time of the injury complained of, become defective in that the adjustment of said guard had become worn and defective and loosened and misplaced, thereby exposing the operator of said machine to great danger and injury because of said defect."

. The amendment was allowed.

GRANT, J. ( *after stating the facts*). 1. The statute of amendments ( 3 Comp. Laws, § 10268) is very broad, and in the furtherance of justice has been liberally construed by this court. See *Croze* v. *Land Co.*, 153 Mich. 363 ( 117 N. W. 81 ). How the pleader in this case should have committed the mistake in alleging that there was no guard when in fact there was one it is difficult to understand. The case was tried throughout upon the theory

of a defective and unsafe guard.  Defendant makes no claim to have been taken by surprise.  There was no request to recall the jury and ask for further time.  Under the circumstances, we think the amendment was permissible.

2. It is strenuously urged on behalf of the defendant that the danger in feeding clothes into this mangle was obvious, that plaintiff had worked in this and other laundries, and that she therefore assumed the risk.  It appears from her testimony that she had once, some time before, worked for a few weeks in another laundry upon a mangle different from that of the defendant, upon which there was scarcely a possibility of the hands of the feeder getting into the rollers.  That machine, she testified, had an apron which carried the clothes into the rollers and a guard, and she could not get her hands within about a foot of the rollers.  In this case the rollers were only an inch and a half or two inches from the guard.  She testified that the starch was sticky, that the aprons were heavy with it, and that as she gave the apron (the fourth one which she fed to the machine) a shove, as is customary, her hands stuck to the apron, went under the guard, and into the rollers.  She also testified that this was the first occasion in which she had been called upon to feed the mangle in defendant's laundry; that no instructions were given her or information of any latent danger, or that the guard was defective or out of repair.

One Frank Dunham, who was at the time defendant's foreman, described this machine and the defect as follows:

"There was a guard in front of the first padded roll, probably about two or three inches in front of it, fastened to the frame of the machine by little brackets with a slide, and could be raised and lowered, and the guard was fastened to those brackets with screws.  That guard was for two purposes—one to keep their hands from between the rolls, and the other was to guide the strings along.  We

had to put strings along the padded rolls in order to keep the goods from following them along, and there were little eye screws in the guard that the strings ran through. If the guard was in the position it ought to be, it would not be more than one-half to five-eighths of an inch over the feeding board. It was kept in that position by screws that fastened it in the slides in the end of the machine to brackets.

"*Q.* On this day in question what was the position of this guard and its condition?

"*A.* Well, the mangle was in poor condition all the way through. It was an old mangle. If the guard was left to drop down, as it naturally would, with nobody touching it, it would be pretty near in its right place, but we had trouble with it, and could not keep it in place. We would have to stand there with a screw-driver all the time to keep these screws tightened up, and you could shove it up by shoving your hand under it. The screws were at either end of the mangle in those little brackets that fastened it to the frame. It was not possible on the day in question to screw them so they would stay permanently tight—not with what we had to do with. It could have been made to stay there if they had took the proper method. It could have been bolted there so that it would have stayed. This guard I know was loose most of the time. It was loose when I went there. It might have been tight once in a while right after we tightened it up, but it would come loose again right away. I went there in February previous to the accident. I couldn't tell how often I tightened that up while I was there. My duties were such that I didn't have time to keep watch of the mangle all the time. I had other work to do."

Similar testimony was given by another employé, Mrs. Finch. She testified that the guard frequently became loose, that they did not then use it until it was tightened, and that, when it became loose, they notified the superintendent, Mr. Boyce. It is manifest, according to the evidence on the part of the plaintiff, that, if this guard had been set at the proper height from the mangle board, plaintiff's fingers could not have reached the rollers. Had plaintiff worked for some time as had the plaintiff in the recent case of *Butler* v. *Frazee,* 211 U. S. 459 ( 29 Sup. Ct. 136 ), she undoubtedly should be held to have assumed

the risk. But she had no information or knowledge of the defective condition of the guard. Her experience in another laundry with another machine had taught her that she could not get her hands past the guard and into the rollers. If the jury believed the testimony of plaintiff's witnesses, this guard was seriously defective and dangerous, and neither the defect nor the danger was obvious to one placed to work upon the machine for the first time. No complaint is made of the instruction of the court, provided there was a case for the consideration of the jury, neither could there be, for it was exceedingly clear as to the circumstances under which it was the duty of defendant to instruct the plaintiff how to guard against dangers not obviously apparent, under what circumstances plaintiff assumed the risk, and when she would not, and as to the negligence of defendant and the contributory negligence of the plaintiff. All the questions of fact were properly submitted to the jury.

The judgment is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.