### PAYNE v. McDONALD & LANGSTROTH CO., Inc.

Court of Appeals of District of Columbia.
Submitted February 7, 1928. Decided May 7, 1928.

No. 4602.

Master and servant ⟨⟩288(10)—Evidence of employee's knowledge of negligence and assumption of risks arising therefrom justified directed verdict for employer.

In action by structural iron worker against employer for injuries received in fall while working on iron smokestack, evidence relative to plaintiff's knowledge of negligence complained of and assumption of risks arising therefrom *held* sufficient to justify directed verdict for defendant.

Appeal from the Supreme Court of the District of Columbia.

Action by Lee A. Payne against the McDonald & Langstroth Company, Inc. Judg-

ment for defendant, and plaintiff appeals. Affirmed.

T. M. Wampler and M. J. McNamara, both of Washington, D. C., for appellant.

B. S. Mimor, H. P. Gatley, H. B. Rowland, and A. P. Drury, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of United States Court of Customs Appeals.

BLAND, Acting Associate Justice. This is an appeal from the Supreme Court of the District of Columbia, and calls for review of the judgment of that court, based upon a verdict directed in favor of the defendant, in an action for damages for personal injury.

The declaration of the plaintiff in the court below was in five counts originally. Upon the first, third, and fifth counts, the plaintiff voluntarily consented to nonsuit. The sole assignment of error is the ruling of the trial court in directing the jury to return a verdict for the defendant on the second and fourth counts of the declaration. The facts, as shown by the evidence, are substantially as follows:

In May, 1925, the appellant, who had been a structural iron worker for the previous eight years, was employed by the appellee as an iron worker on the Hecht building, which was in the course of construction in the District of Columbia. The appellee had the contract for placing certain structural iron and a certain iron smokestack in the building. The appellant had been working on the building for about six weeks prior to the injury. The smokestack which was being erected came in oval-shaped sections, 15 or 18 feet high, with a flange on the end of each section, which flanges contained holes through which bolts were placed and later riveted. The stack was oval in shape, and, with this exception, a kodak film spool is said to be a fair representation of the section of the stack.

On the day of the injury, the stack had already been erected up to the seventh floor. Lee R. Burch was the foreman of the job, under the direction of Mr. McDonald and Mr. Downs, officers of the appellee company. Burch had been engaged in work as a structural iron worker for more than twenty years, and had employed appellant in connection with the Hecht job. Immediately prior to the injury, on account of rain, work had ceased on the job, and the men were in a little toolhouse which was located on what might be regarded as the second floor of the steel frame structure. Upon the arrival of a truck containing a section of the stack, Burch ordered the gang to go down to the street and hook onto the section of the stack so that it could be taken off the truck. Appellant and a man named Burke went down to the street for that purpose. Appellant took to the ground with him a wrench which was picked up on the second floor and handed to him by one Winston, who was an iron worker, and who was a boss of one of the gangs. The wrench was on the floor of the shanty, and was a three-quarters of an inch wrench and about 12 or 13 inches long. It did not taper much at the end, but was flat down to about $3\frac{1}{2}$ inches from the point. When Mr. Winston handed him the wrench, appellant immediately looked around where the wrenches were lying to see if he could find a better one, but could not find one.

The sections of the smokestack were ordinarily hoisted by a derrick, from the ground below, by means of angles which were bolted to the sides of the section, and which raised the section up in a perpendicular manner so that it could be placed on the end of the last section of the stack which had already been put in place. On account of the length of the section and the height of the stack, the latter method of hooking onto the section could not be employed, since the boom of the derrick was not long enough to permit the section to be raised to sufficient height for making the connection. The men were ordered to place around the section what is termed a "choker," 3 or 4 feet from the top. In hoisting the section with the choker, it would not stand vertically, but would swing at an angle, illustrated by a lead pencil being suspended from a string tied around the same about two inches from the top. By using the choker, placed 3 or 4 feet from the top, the stack could be raised high enough to make the lower end of the section being elevated connect with the upper end of the top of the stack. If the angles were used and the stack hoisted sufficiently high, upon it being lowered, the flanges of the two connecting portions of the stack would come into close position and the holes in the flanges, through which bolts were to be placed, would be near together. Owing to the position of the choker, which caused the section to hang at an angle, only one side of the flanges or rims of the two sections to be connected would come into position when first lowered.

Appellant and Mr. Burke, serving as connectors in connection with the sections of the smokestack in controversy, placed themselves on a cross steel beam near the top of

the last section of the smokestack, which had been placed in position for the purpose of making the connection. The connection was made, ordinarily, by placing a spud wrench in one of the holes of the flange of the rim of the section being lowered and then into the hole of the rim of the section which had already been placed, and, in this manner, bringing the two holes into juxtaposition. The spud wrench ordinarily used was about 18 inches long, round, and tapered off to a point at the end, and was longer and more tapering than the wrench which appellant was using. The end of the spud wrench was likened to a penholder which tapers at the top, and would reach further into the holes of the rims than the other wrench.

Immediately prior to the injury, the section had been lowered to a point where one side of the rim came into position with the top of the stack, and Burke, being on that side of the stack, stuck his wrench through the two holes; that is, the hole in the flange being lowered and the hole in the flange on the top of the stack. The appellant had his wrench in one of the holes of the flange, and was trying to pull the section into such a position as to make the connection, when he fell, on account, as he testifies, of the vibration or swinging of the section, owing to the fact that the rim only touched the top of the stack on one side, due to the angling position of the section, which in turn was due to the position of the choker. Appellant fell to the ground below, and was severely injured.

The first count of the declaration proceeds upon the theory that appellee was negligent in failing to furnish appellant with a safe and proper wrench for use in the work he was directed to perform.

The fourth count of the declaration is grounded upon the negligence of the appellee in failing to furnish proper machinery, including a proper derrick for hoisting the smokestack, and alleges negligence in failing to furnish a derrick of sufficient length to raise the section high enough so as to permit the use of angle irons in such a manner as to permit the section to hang straight up and down, and thus come into easy position, and avoid the vibration complained of. The appellant, in the fourth count, complains of the shortness of the derrick, which resulted in the use of the choker, and the use of which choker occasioned the vibration which caused appellant to lose his balance and receive the injury complained of.

Appellee contends that there is no proof of negligence on the part of appellee, and

that, if there was negligence, the appellant's own testimony shows that such negligence was not the proximate cause of the injury, and that the injury resulted from risks ordinarily incident to the appellant's employment, and that therefore he assumed them; that, if there was negligence which resulted in appellant's injury, such negligence was that of a fellow servant.

It is not necessary for us to decide or discuss whether the complaint properly alleges negligence and whether the proof sustains such allegation, since we think, as to each count, at least one of the other contentions of the appellee must control. We do not regard it as essential for us to decide whether the alleged negligence was the proximate cause of the alleged injury or whether the alleged negligence was or was not that of a fellow servant, since we are certain, under the statement of facts in this case, that the court below was justified in directing a verdict in favor of appellee, for the reason that the proof showed that appellant had full knowledge of all the negligent things complained of, and assumed the risks which grew out of them.

According to appellant's own testimony, he knew that the wrench was too short and was not a proper wrench. His service did not require him to use an improper wrench. With full knowledge of its defects, if it, in fact, had defects, he proceeded to use it, assuming such risks as its use entailed. He also understood and appreciated the danger, or should have done so, of the use of the choker, with the resulting vibration, and likewise assumed the ordinary risks incident to the same.

We think the rule of assumption of risk, as applied to this state of facts, is too well settled to require extended citation.

In Butler v. Frazee, 25 App. D. C. 392, 403, affirmed 211 U. S. 459, 29 S. Ct. 136, 53 L. Ed. 281, the rule was thus stated:

"The doctrine of law is established beyond question, that, where an employee undertakes and continues the use of defective and unsafe appliances, either with actual notice of such defect, or where the same is open to ordinary observation in the usual course of its use, he must be deemed to have accepted the risk of all danger reasonably to be apprehended from such use, and cannot recover of his employer."

See, also, Davis v. Trade Dollar Consolidated Mining Co. (C. C. A.) 117 F. 122; Chicago, Milwaukee & St. Paul Railway Co. v. Ross, 112 U. S. 377, 5 S. Ct. 184, 28 L. Ed. 787; Boldt v. Pennsylvania Railroad Co., 245

U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Anderson v. Smith, 35 App. D. C. 93; Wood v. Heiges, 83 Md. 257, 34 A. 872.

The judgment of the court below is affirmed, with costs.

Judgment affirmed.