## CHICAGO, R. I. & P. R. CO. v. CLARK.

No. 25887. Oct. 15, 1935.

Rehearing Denied Nov. 26, 1935.

W. R. Bleakmore, John Barry, W. I. Farmer, and Robert E. Lee, for plaintiff in error.

A. L. Morrison, W. P. Morrison, John Morrison, and Ray K. Bannister, for defendant in error.

PER CURIAM. This is an action to recover damages for injuries to plaintiff's health under the Federal Employers' Liability Act (45 USCA, secs. 51-59). It appears that plaintiff, Chatman Clark, was employed as a flue blower at defendant's roundhouse in El Reno, Okla., from 1920 to 1930. The action was instituted September 17, 1931, in the district court of Oklahoma county by plaintiff, Chatman Clark, against said Chicago, Rock Island & Pacific Railway Company. Trial was had in said district court to the court and jury, resulting in a verdict and judgment in favor of plaintiff for $1,000, and defendant has duly perfected its appeal.

Plaintiff alleged that for a number of years prior to the date of filing his petition he was employed in the defendant's roundhouse in the city of El Reno as a flue blower; that his duties required him to enter the fire boxes of the engines shortly after the fires were removed, and while the engines were still in a heated condition and while there was still pressure in the boilers from steam, taking with him a line conducting compressed air and blowing the flues in the engines; that this work entailed the breathing of poisonous gases, soot and smoke and heated air; that the breathing of these caused the following conditions to appear in persons employed in this kind of occupation, to wit, carbon gas poison, chronic endocarditis, valvular heart lesions and chronic anemia; that this fact was well known to defendant or could have been known to it by the use of ordinary care, but that these conditions were not known by plaintiff and he was unaware that these consequences would result to one's health from following such employment; that plaintiff was taken sick in August, 1930, and suffered from carbon gas poisoning, chronic endocarditis, valvular heart lesions and chronic anemia, caused from breathing poisonous gases, vapors, soot and hot air while following his usual duties working for defendant company, resulting in total and permanent disability and making him a practical invalid; that there is a type of mask that can be furnished employees engaged in this kind of work that would prevent them from contracting the aforesaid occupational diseases, which defendant well knew or by the use of reasonable care could have known, and have provided plaintiff with said mask; that defendant negligently failed to warn plaintiff of the aforesaid risks and hazards of said occupation; that by reason of defendant's negligence in so failing to warn plaintiff and in so failing to furnish him proper mask, he has been damaged.

After general demurrer to the petition, which was overruled, defendant in due time filed its answer denying generally the allegations of the petition and pleading affirmatively the separate defenses of assumption of risk and contributory negligence, under the aforesaid act.

The defendant on appeal has grouped its assignments of error under the following propositions:

"1. The trial court erred in overruling the demurrer of the defendant railway company to the evidence introduced by the plaintiff.

"2. The trial court erred in overruling the defendant railway company's motion for a directed verdict.

"3. The trial court erred in overruling

the motion for new trial filed by the defendant railway company."

With reference to his duties and the conditions under which he was required to work, plaintiff testified as follows:

"Well, most of the time I was flue blower; prior to that just a laborer around, sometimes put to cleaning pits and picking up scraps and iron. Well, a flue blower's job is to go into those locomotives just as soon as they come off the road and the fire is knocked out and they are put in the house and sometimes they are blowed off and it takes about 30 to 40 minutes for the steam to blow off and as soon as the steam is blowed off you are inside of them cleaning the fire box, cleaning the flue sheet, cleaning the ashes and soot. Q. You get right inside where the fire box is? A. Yes, sir. Q. What do you take with you? A. You have got a hose with compressed air. Q. What do you do with the air? A. You go through and scrape the flue sheet off and take the hose and you blow your flues from back in the fire box up to the front end; the engine has a draft that works when the flues are not choked up too bad; it will suck that all out to the front end. Q. Was there soot in those engines? A. Yes, sir, absolutely. Q. Tell the jury about that. A. Take a coal burning engine when it comes off the road, when it is drafting, it accumulates what you call clinkers; the flues become coated with something like hard dirt, clinkers sometimes as big as your fist, and the flues get stopped up and you get a report about the engine is not steaming on account of the flues stopped up, and you have got to take that hose and work back and forward in the flues and the soot is so heavy you can't see what you are doing half the time. Q. How hot was it inside those boilers? A. So hot you could hardly stay in there to work; sometimes it would be 100 pounds and sometimes 110."

Doctor Boyd, who had been plaintiff's family physician off and on for some 11 years, testified that he examined plaintiff in 1927, and at that time advised him to quit and told him if he continued in that work he might become totally and permanently disabled. Although plaintiff throughout his testimony insisted that he never until 1930 understood and appreciated the risks and hazards of his employment nor the effects the same might have on his health, this testimony of the doctor stands undisputed and undenied. Plaintiff did not deny having this warning, although he was back on the witness stand in rebuttal. The testimony is also uncontradicted that plaintiff was, and since as early as 1925 had been, suffering continuously from syphilis. And we think

the only conclusion that could be reached from the testimony is that the only ailment from which plaintiff is suffering, not attributable to syphilis, is bronchitis. We think the testimony of Dr. Catto, plaintiff's own witness, will admit of no other conclusion.

"Q. Would the mere breathing of soot, smoke or coal dust, would that, in a normal, healthy person, cause the condition of the heart you have described this man to be suffering from? A. Only as far as it causes bronchitis; it would cause bronchitis or toxemia, or anything that would keep the oxygen out of the lung would cause a heart disease or toxemia. Q. But I mean you take a man with a normal, healthy body, breathing or inhaling coal, soot or smoke, will that actually affect his heart? A. Give a normal, healthy individual, and doing that only at intervals, it would not; if persistent, continued, and he had some predisposed cause, it would."

The testimony does show that the conditions and ailments attributable to syphilis could have been accelerated or aggravated or intensified by working where it was hot and breathing hot air, coal dust, soot and smoke.

We think the testimony is also uncontradicted that defendant had and kept at all times while plaintiff was engaged as a flue blower an available supply of sponges, accessible to plaintiff, which he could have had and worn, and which would have prevented his contracting the ailments of which he complains, or at least would have reduced the chances of contracting such ailments to the minimum; that the said sponge was the appliance usually and customarily employed for such purpose prior to the time when plaintiff says he was furnished a mask, to wit, in November, 1929. Other flue blowers who worked for defendant during the time plaintiff did suffered no injury, and plaintiff admits he saw them wearing sponges.

"As construed by the United States Supreme Court an employee assumes the ordinary risks and hazards of his occupation and also those defects and risks which are known to him or are plainly observable, although due to the master's negligence." Chicago, Rock Island & Pac. Ry. Co. v. King, 165 Okla. 169, 25 P. (2d) 304; Arizona Copper Co. v. Hammer, 250 U. S. 400.

"Where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and

all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly." Butler v. Frazee, 211 U. S. 459.

As stated by the court in Arizona Copper Co. v. Hammer, supra:

"The rule existing in the absence of statute as usually enunciated is that all consequences of risk inherent in the occupation, and normally incident to it, are assumed by the employee, and afford no ground of action by him or those claiming under him, in the absence of negligence by the employer, and even risks arising from or increased by the failure of the employer to take the care that he ought to take for the employee's safety are assumed by the latter if he is aware of them or if they are so obvious that any ordinarily prudent person under the circumstances could not fail to observe and appreciate them."

Plaintiff testified that he was 46 years of age at the time of the trial in 1933. That would make him 33 years of age at the time he began work as a flue blower for the defendant in 1920. He was therefore at all times during this said employment a man of mature age. The quality of his testimony demonstrates that he is a man of average intelligence and experience. The first time he ever entered one of those fire boxes to perform the duties of his employment he was confronted with all the conditions that existed there,—the heat, the soot, the ashes, the dust, the smoke. They were perfectly obvious and apparent. The attendant discomforts from working under such conditions, the effect of the heat on his body, the breathing of the hot air, the soot, dust, ashes and smoke, the burning sensation in his chest, were all noted and realized by him from the beginning. No conditions, risks, or hazards are shown to exist except what were inherent in the occupation and within the common knowledge which all possess; as readily apparent to, and as easily understood and appreciated by, plaintiff as defendant. One person of average intelligence and experience and ordinary prudence is bound to know and appreciate what will be the discomforts, and what may be the ultimate results to one's health, from continued working under such conditions, as well as another.

We have not overlooked the cases of Wiseman v. White Lead Co. (Neb.) 160 N. W. 985;

Pigeon v. W. P. Fuller & Co. (Cal.) 105 P. 976; and Thompson v. United Laboratories Co. (Mass.) 108 N. E. 1042, cited by able counsel for plaintiff in their brief; we have considered them carefully. But we think those cases are clearly distinguishable from the case at bar. There the servants were put to work in rooms or on premises where poisonous chemicals were being manufactured or compounded, mixed or packed. Poisonous substances were present and were inhaled, the nature and effect of which could be thoroughly known and appreciated only by chemical experts or persons skilled therein or persons properly warned; not within the common knowledge which all possess; a knowledge of which, from the nature of things, was bound to have been possessed by the master and not by the servant, though an ordinarily prudent person. In the instant case there is no proof that poisonous substances were present at all.

In our opinion, in the instant case, it is not shown that the defendant railway company was guilty of any primary negligence. But even if that were not so, it is undisputed that plaintiff was told by Dr. Boyd as early as 1927 that if he continued in his occupation he might become totally disabled. From this time on there can be no question but that he assumed the risk, even if it could be said defendant were guilty of negligence. If he ever had any cause of action, it accrued four years prior to the filing of the suit and was barred by the two-year statute of limitations under the Federal Employers' Liability Act, supra, which, as conceded by the parties, governs this case.

We therefore hold that plaintiff assumed the risk, and that the judge presiding at the trial should have instructed the jury to return a verdict for defendant.

Having reached this conclusion, it is not necessary to consider the other points raised by plaintiff in error.

The judgment of the trial court is reversed and this cause is remanded, with directions to enter judgment for defendant railway company.

The Supreme Court acknowledges the aid of Attorneys Garland Keeling, Herbert S. French, and Chas. Skalnik in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Keeling and approved by Mr

French and Mr. Skalnik, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.