## AMERICAN CAR & FOUNDRY CO. v. ALLEN.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1920.)

No. 5414.

1. **Master and servant** ☞217(16)—**Risk of known absence of platform railing assumed.**

   Where it appeared from plaintiff's own testimony that he had known for some time that there was no railing on the platform from which he fell, risk of injury resulting from employer's failure to place railing was so open and obvious that it was assumed by plaintiff, so that it was error to refuse requested instruction that plaintiff could not recover because of negligent failure to place a railing around the platform.

2. **Appeal and error** ☞1067—**Error in refusing instructions on assumption of risk intensified by charge.**

   Error in refusing a requested instruction that a servant assumed the risk occasioned by his master's failure to place railing around platform, so that he could not recover for injuries caused by such failure, was intensified by the court's charge that the whole question was whether master furnished a safe place for work and whether plaintiff was ordered to do the work he was doing when injured.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Bart Allen against the American Car & Foundry Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

Wm. R. Gentry, of St. Louis, Mo. (M. F. Watts and Edwin W. Lee, both of St. Louis, Mo., and G. A. Orth, of New York City, on the brief), for plaintiff in error.

O. J. Mudd, of St. Louis, Mo. (Ben Philipson, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and LEWIS and MUNGER, District Judges.

SANBORN, Circuit Judge. In the court below Bart Allen was the plaintiff in this case and the American Car & Foundry Company, a corporation, was the defendant, and henceforth they will be so called. The defendant was a corporation that owned and operated a large plant, and the plaintiff was it puddle boss. His duties were to have charge of the furnaces and of the general work through the mill, and when there was a man lacking to jump in and take his place.

The defendant had commenced to build a bathhouse in the fall of 1917, and had erected and inclosed it ready for plastering about three weeks before January 11, 1918, when the weather became so inclement that it was compelled to suspend work on the outside of the building, to put temporary doors in it and to maintain fires in stoves in its three rooms on the first floor and in its two rooms on the second floor, to keep the cement from freezing and to dry it. When this work was suspended, on the east side of the building rising from the south end to a platform about 10 feet long and 3 feet wide, 12 feet above the ground, there were stairs about 3 feet wide, and at the head of these stairs there was a temporary door opening from the platform into the south room on the second floor, and a few feet further north there was another such door opening from the platform into the north room on the second floor. There was no railing on this platform. The building, the stairs, the doors, and the platform had been in this condition for three weeks before January 11, 1918. During these three weeks the employés of the defendant had used these stairs, these doors, and the platform for the purpose of going to and from the rooms on the second story and keeping up the fires in the stoves therein, and the plaintiff had sent some of the men under his control there to do that work. On the evening of January 11, 1918, about three weeks after the suspension of the outdoor work, in the absence of other employés, the plaintiff went with a coal oil torch, pursuant to the directions of the superintendent, up these stairs into the rooms, and put coal on the fires to maintain them. After he had done this, and as he came out of the north room, he lost his balance, and fell from the platform to the ground, and was injured. He sued the corporation for damages, and alleged that it caused his injuries by its negligence, in that (1) it did not light the platform; (2) in that it maintained no railing around the platform; and (3) in that it had not furnished the doors with knobs or handholds such are in common use, but the only means by which the doors were to be opened was a piece of ordinary small wire which was insecurely fastened on the inside of the door, or of the opening through the door, that the bottom of the door rubbed along the floor, that the plaintiff pulled on the wire, the fastening on the inside of the door broke or came loose, and caused him to lose his balance and fall to the ground. The defendant denied the alleged negligence, there was a trial to a jury, and a verdict and judgment for the plaintiff.

[1] The defendant has assigned several alleged errors in this trial, one of which is the refusal of the court at the close of the trial to grant its request to charge the jury that—

"Plaintiff's own evidence reveals the fact that he knew for several weeks preceding his injury, that there was no railing upon the porch from which he fell on the occasion of his injury, and therefore under the law as declared by the courts of the United States, the plaintiff assumed the risk of any injury that might result to him by reason of the absence of such railing; and plaintiff is therefore not entitled to recover on the ground that the defendant had neglected to erect such railing on said porch."

The plaintiff had testified that he knew that there was no railing on the platform; that the platform without the railing stood there a good while, two or three weeks before the accident, "before they finished it, for the weather was so they couldn't do any outside work"; that the men had been sent up the stairs along the platform and through the doors during these three weeks, to keep up the fires in the rooms on the second floor; and that he had himself given orders for men to be sent there. The Supreme Court has stated the law applicable to the situation disclosed by the plaintiff's testimony in these words:

"Where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly." Butler v. Frazee, 211 U. S. 459, 467, 29 Sup. Ct. 136, 138 (53 L. Ed. 281).

Again:

"When the employé does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé assumes the risk, even though it arise out of the master's breach of duty." Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475) ; Hough v. Railway Co., 100 U. S. 213, 224, 25 L. Ed. 612.

This court has repeatedly declared the law on this subject to be:

That "a servant, by entering and continuing in the employment of a master without complaint, assumes the ordinary risks and dangers of the employment, and the extraordinary risks and dangers thereof which he knows and appreciates"; that "although the risk of the master's negligence and of its effect unknown to the servant is not one of the ordinary risks of the employment which he assumes, yet if the negligence of the master or its effect is known and appreciated by the servant, or is obvious, or 'so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience,' * * * and he enters and continues in the employment without objection, he elects to assume the risk of it, and he cannot recover for the damages it causes"; and that "when a defect is obvious or 'so patent as to be readily observed by a servant by the reasonable use of his senses, having in view his age, intelligence, and experience,' and the danger and risk from it are apparent, he cannot be heard to say that he did not realize or appreciate them." Chicago, B. & Q. Ry. v. Shalstrom, 195 Fed. 725, 728, 729, 115 C. C. A. 515, 518, 519; Owl Creek Coal Co. v. Goleb, 210 Fed. 209, 215, 127 C. C. A. 27, 33; Chi., M. & St. P. Ry. v. Benton, 132 Fed. 460, 462, 65 C. C. A. 660, 663; Stewart v. Brune, 179 Fed. 350, 355, 102 C. C. A. 534, 539; Lake v. Shenango Furnace Co., 160 Fed. 887, 892, 88 C. C. A. 69, 74.

For the general rules of law on this subject, see Union Pacific Ry. Co. v. Marone, 246 Fed. 916, 924, 159 C. C. A. 188 and cases there cited.

As by the testimony these facts appeared without dispute: That the condition of the platform and the absence of the railing had been for two or three weeks before the accident, and continued to

be constant; that they were well known to the plaintiff; that the danger from the use of the platform and of losing one's balance, and of falling from it in the absence of the railing, is suggested by the common knowledge which all possess; that both the conditions and the dangers were obvious to the common understanding; and that the plaintiff was of full age, intelligence, and adequate experience—he was not entitled to recovery on account of the absence of the railing, under the law as declared by the courts of the United States, and the court below fell into a fatal error in its refusal to charge as requested, even if there was substantial evidence that the absence of the railing was attributable to the causal negligence of the defendant. Whether or not there was such evidence of the defendant's negligence is a contested issue, upon which no opinion is intimated or expressed, because the conclusion already reached renders it immaterial, as it does every other question discussed in the briefs or arguments.

[2] The error to which reference has been made is emphasized by the fact that the trial court not only refused the request which has been considered, but it summed up its charge in these words:

"I will say to you that in my judgment, from all the evidence in the case, the whole question is: Did the master furnish a reasonably safe place for the plaintiff to work, and whether or not he was ordered to do the work that he was engaged in at the time he fell and received the injuries."

And it failed to give to the jury any instruction whatever on the question of the plaintiff's assumption of the risks which his own testimony made so important an issue in his case. This failure and the refusal of the requested charge deprived the defendant of one of its defenses and gave it the right to another trial.

There are other alleged errors assigned; but, if they existed, they probably will not occur again, and their discussion and decision are omitted, because they are not necessary to a determination of the question in this court whether the judgment below can stand.

Let that judgment be reversed, and let this case be remanded to the trial court, with directions to grant a new trial.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes