## ANDERSON et al. v. SOUTHERN RY. CO.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1927.

No. 2609.

**1. Railroads ⊂⊃275(4)—Insufficient number or inferior quality of stakes holding telegraph poles in place on railroad car held not defect in car, rendering railroad liable for death of consignee's employee unloading.**

In action against railroad for death of foreman of consignee in unloading carload of telegraph poles, railroad car *held* not defective itself because of insufficient number of stakes used to hold the load in place, or of their inferior quality; new stakes being used for each load of telegraph poles, and different stakes or none being used for other classes of freight.

**2. Railroads ⊂⊃275(4)—Car of telegraph poles held properly loaded.**

In action against railroad for death of consignee's foreman in unloading a carload of telegraph poles, facts *held* to conclusively show that the car was properly loaded.

**3. Negligence ☞66(1)—One who is careless in face of apparent danger is guilty of contributory negligence.**

A man has no right to be careless and reckless in the face of open and apparent danger, and, if he proceeds under such circumstances, he is guilty of contributory negligence to a degree that bars a recovery.

**4. Railroads ☞278(2)—Consignee's foreman, injured while unloading car of telegraph poles, held guilty of contributory negligence as matter of law.**

In action against railroad for death of consignee's foreman, who in unloading a carload of telegraph poles cut wires extending between stakes on either side of the car supporting the load, thereby causing the stakes to break and resulting in his death, deceased *held* guilty of contributory negligence as matter of law.

**5. Trial ☞141, 142—Verdict may be directed, where there is no conflict in evidence, or no materially different inferences may reasonably be drawn.**

Where there is no conflict in the evidence, or where no materially different inferences may be reasonably drawn from the evidence, a verdict in accordance with the law may be directed.

**6. Railroads ☞275(1)—Railroad held not liable for death of consignee's foreman, unloading shipment of telegraph poles.**

Where railroad discharged its entire duty in transporting and delivering an interstate shipment of telegraph poles, it was not liable for the death of consignee's foreman in unloading them.

**7. Railroads ☞275(1)—Railroad held to have fully performed duty to inspect carload of telegraph poles injuring consignee's employee.**

In action against railroad for death of consignee's foreman in unloading a carload of telegraph poles, evidence *held* to show that the railroad fully performed any duty to inspect the car, having inspected it eight times and delivered it intact and secure.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Aiken; Ernest F. Cochran, Judge.

Action at law by P. L. Anderson and another, as administrators of the goods, chattels, and credits which were of Thomas McKie Anderson, deceased, against the Southern Railway Company. To review a judgment for defendant, plaintiffs bring error. Affirmed.

L. E. Croft, of Aiken, S. C. (Williams, Croft & Busbee and John F. Williams, all of Aiken, S. C., on the brief), for plaintiffs in error.

P. F. Henderson, of Aiken, S. C. (Frank G. Tompkins, of Columbia, S. C., and Hendersons & Salley, of Aiken, S. C., on the brief), for defendant in error.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an action of law by the administrators of Thomas McKie Anderson, deceased, against the Southern Railway Company, a Virginia corporation, to recover damages for the death of Anderson. On the trial of the case, a motion for a directed verdict in favor of the defendant was granted by the judge below, and judgment rendered for the defendant for the costs, to which judgment of the court this writ of error was sued out.

The defendant received, in the course of its business as a carrier, a flat car consigned and shipped by Georgia Creosoting Company, from Brunswick, in the state of Georgia, to Carolina Light & Power Company, at Aiken, S. C., loaded with 70 telegraph poles, about 30 feet in length, each weighing in the neighborhood of 800 pounds; total weight of the load on the car being approximately 57,000 pounds. The car was 40 feet long, and there was approximately 5 feet space between the poles and the end of the car at each end.

The poles were held in place on the car by eight upright standards or stakes, the butts of which were fastened in sockets attached to the car for that purpose. These standards or stakes were braced by twisted wire lines, running from one side of the car to the other, tying the stakes together. Each stake had two of these fastenings or braces, one about the middle of the load of poles, and another near the top of the stakes across the top of the load. These stakes were green pine saplings about 5 inches in diameter in the center, and cut at the butts so as to go into the sockets.

The car in question was shipped from Brunswick, Ga., over another line of railroad, and was owned by the Atlantic, Birmingham & Atlanta Railroad Company, but was accepted by the defendant company, transported over the defendant's line of road to Aiken, S. C., and there placed on a side track for the purpose of being unloaded by the consignee, the Carolina Light & Power Company.

The car was placed for unloading on the 6th day of July, 1925, and two days later, on the 8th, a gang of men in the employ of the Carolina Light & Power Company started to unload the car. The deceased was foreman of the unloading crew. Preparatory to the unloading, deceased and one of the men under his direction went on top of the load and proceeded to cut the wires running between the stakes across the car. As the wires were cut, the load began to settle, and when the last wire was cut the standards broke on both sides of

the car, and Thomas Anderson was thrown under some of the poles and so injured that he died.

[1] The claim of the plaintiffs is that the four stakes used for holding the load in place were neither sufficient in number nor sufficiently strong, and that they should have been of hardwood or steel; that the use of an insufficient number of stakes of an inferior quality constituted a defect, amounting to a defect in the car itself; that the car was improperly loaded, and that one of the stakes was mildewed and thereby weakened.

It is undisputed that, in the loading of poles of the character of those in this instance, new and different stakes have to be used with each load; the stakes being destroyed with the unloading. Under these circumstances it could hardly be held that an insufficient number of stakes, or stakes inferior in quality, could constitute a defect in the car itself. They were not parts of the car, and the car could be used for the purpose of hauling other classes of freight, with different stakes, or without any stakes whatever.

[2] It is admitted that the car was loaded and the load secured in the manner required by the rules of the American Railway Association and as was customary at the plant of the consignor. That it was properly loaded seems to be conclusively proven by the fact that it carried safely until delivered at the point of unloading, and the evidence is uncontradicted that at the time of the beginning of the unloading, when the deceased and the fellow employee, Blackman, went on top of the load to cut the wires, the load was solid, and did not shake or move, and was secure until the deceased himself ordered the cutting of the last wire, which cutting destroyed the security of the load. It is uncontradicted that, as the wires were cut, the load began to shake and settle, and that just before the last wire was cut, while Blackman and the deceased were on top of the load, Blackman said to the deceased, "Tom, when I cut this wire, if these stakes break, what is to become of me and you?" Deceased said, "We will try to stay on the south side; go ahead and cut." Blackman went around and cut the wire, and everything went; all the stakes giving way on both sides of the car.

[3, 4] If there were an insufficient number of stakes, that fact was plainly to be seen by the deceased. He was warned by his coworker before the last wire was cut, and ordered it cut. No agent or employee of the defendant company was present at the time of the unloading. It was clearly the duty of the deceased, as foreman of the unloading crew, to see to it that the car was unloaded in a safe manner; a thing which could have undoubtedly been done in two or more ways. The stakes could have been braced from the ground on one side, so that the poles would only roll off on the sides where the skids had been set for them to roll off, or the last wire could have been cut by some long-handled instrument. Even if it were impossible to unload the car safely, the deceased, as foreman, should not have permitted the unloading in a manner so hazardous and dangerous as was the course taken. A man has no right to be careless and reckless in the face of open and apparent danger, and if he proceeds under such circumstances he is guilty of contributory negligence to a degree that bars a recovery. The load was secure until the deceased himself destroyed the security. In this case the evidence establishes contributory negligence so clearly as to admit of no other reasonable conclusion with regard thereto.

[5] The rule in federal courts is that, where there is no conflict in the evidence, or where no materially different inferences may be reasonably drawn from the evidence, a verdict in accordance with the law may be directed. Delk v. Railroad, 220 U. S. 587, 31 S. Ct. 617, 55 L. Ed. 590. In this case Mr. Justice Harlan says:

"The rule upon that subject is well settled by the authorities. It is that, 'when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.'"

[6] In Illinois Central Ry. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528, Mr. Justice Hughes says:

"It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents, or employees, of the employing carrier, or by reason of any defect or insufficiency, due to its negligence, in its property or equipment. * * *"

The evidence does not disclose any fault or negligence on the part of the defendant company or its employees, and it evidently had discharged its entire duty in connection with the transportation and delivery of the car. The condition of the car was apparent to any one who would look, and was easily to be seen by the deceased, who in a heedless and

reckless manner rushed into danger and thereby lost his life.

[7] If the railroad company owed the duty of inspection as to the car in question, especially for the safety of its own employees while the car was in transit, this duty seems to have been fully performed, as the car had been inspected eight times, and was delivered with its load intact and secure to the point of destination.

The evidence in this case being insufficient to support a verdict for the plaintiff, the learned judge below properly directed a verdict for the defendant, and the judgment of the District Court is therefore affirmed.