CONSOLIDATED TEXTILE CORPORA-
TION v. SHIPP.

No. 2968.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1930.

Thomas W. Ruffin, of Raleigh, N. C., for appellant.

Willis G. Briggs, of Raleigh, N. C. (J. W. Bailey and Briggs & West, all of Raleigh, N. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge.

This is an action brought by S. B. Shipp, appellee, hereinafter referred to as the plaintiff, against Consolidated Textile Corporation, appellant, hereinafter referred to as the defendant, for injuries to the plaintiff while working in the mill of the defendant. Action was brought in the superior court of Wake county, N. C., and was removed to the District Court of the United States for the Eastern District of North Carolina. In September, 1929, a trial was had; the jury returning a verdict for the plaintiff in the sum of $3,000. The court below entered judgment upon the verdict, from which action this appeal was taken.

The plaintiff was employed by defendant as master mechanic in its cotton mill in Wake county, N. C., known as the Pilot Mill. As such master mechanic it was plaintiff's duty, among other duties, to keep the overhead machinery in the mill in order. By overhead machinery, according to plaintiff's testimony, was meant "the motors, pulleys, belts and such appliances as were used in driving machinery situate on the floor." A number of motors were included in the overhead machinery, and under them was built a platform about four feet below the overhead motors, which platform was used for the purpose of making repairs on the motors when they were out of order. This platform consisted of substantial planks running around each motor, making a walk way. Because of the leakage and dropping of oil on the machines below, beaver board was placed under one of the motors, filling up the hole about four feet square directly under the motor, in order to catch the dripping oil. This beaver board that covered the square hole was not sufficient to sustain the weight of a man.

On October 29, 1926, being notified that one of the motors was out of order, the plaintiff went to the room where the motor was situated and followed a workman up the ladder onto the platform with the intention of repairing the motor, which happened to be the one under which the beaver board had been placed. Stooping down to go under the motor, the plaintiff fell through the opening, a distance of about four feet, landing on a

machine on the floor below the motor, and was injured.

The plaintiff was in the mill the day after the injury, but did not go to work for two or three weeks after he was hurt. He then worked steadily at the mill until May or June, 1927, without making any complaint to the company with respect to his injury, when he was discharged by the defendant. In his testimony, the plaintiff said, "If the mill had not discharged me, I would not have brought this suit." Suit was brought on the 13th day of June, 1928.

All of the witnesses in the case, who worked in the mill, both for the plaintiff and the defendant, testified that a person could stand on the floor of the room where the accident happened, and see the character of the covering over the hole in question, and could see that the covering was of a light material, designed only for the purpose of catching the leakage of oil and débris from the motor above, but that the covering had been discolored by grease and dust. There was a conflict in the testimony as to whether a covering was put over the hole before the plaintiff was employed by the defendant or after his employment began.

Plaintiff testified that during his employment and before the accident he had "measured nearly every pulley and shaft in the whole mill." This measuring would necessarily have caused the plaintiff to work on the platform in question. When the plaintiff stepped on the unsecure covering over the hole, leaving the substantial platform running around the motor, he had to stoop and go under the motor in a space about four feet high. This he must have done without looking where he was stepping, and it is apparent that had he looked he could have at once seen the character of the covering over the square hole immediately under the motor.

The plaintiff was master mechanic of the mill, and it was his duty to keep all overhead machinery in order. He had sole and complete charge of the machinery. The platform built under the overhead machinery was a part of the equipmet necessary for any repairs that had to be made on the overhead machinery, and consequently came under the direct control of the plaintiff as master mechanic. It was the plaintiff's duty to see that the platform, necessary for the repair of the machinery, was a safe place to work, and if there were any negligence properly attributable to the defendant, with respect to the condition of the platform, it was the negligence of the plaintiff himself. It was clearly the duty of the plaintiff to see that the platform was safe, not only for himself, but for any other workman who had occasion to use it. He went under the motor and stepped on the unsafe place in a careless and reckless manner.

"A man has no right to be careless and reckless in the face of open and apparent danger, and if he proceeds under such circumstances he is guilty of contributory negligence to a degree that bars a recovery." Anderson v. Southern Ry. Co. (C. C. A.) 20 F.(2d) 71, 73.

Plaintiff's failure to use his senses before he stepped on the unsecure covering was gross negligence. Elder v. Plaza Ry., 194 N. C. page 617, 140 S. E. 298; Pope v. Railroad, 195 N. C. page 67, 141 S. E. 350; De Honey v. Harding (C. C. A.) 300 F. 696; Stanwood v. Clancey, 106 Me. 72, 75 A. 293, 26 L. R. A. (N. S.) 1213; Silverthorne v. Parsons, 60 Ohio St. 331, 54 N. E. 259; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 33 S. Ct. 518, 57 L. Ed. 852.

The plaintiff, whose duty it was to see that the platform was safe, and who could have seen that the platform was unsafe, if he had used his senses, certainly assumed the risk of his employment as master mechanic. Texas & P. R. Co. v. Harvey, supra; Boldt v. Penn. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Maki v. Union Pacific Coal Co. (C. C. A.) 187 F. 389; Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335; American Car & Foundry Co. v. Allen (C. C. A.) 264 F. 647.

This court has stated the rule to be that the employee is presumed to assume the risk where the defect "is so plainly observable that he must be presumed to have known of it." Chesapeake & O. Ry. Co. v. Winder (C. C. A.) 23 F.(2d) 794, 795.

The evidence was not sufficient to support a verdict for the plaintiff, and the judge below should have directed a verdict for the defendant at the conclusion of the taking of the testimony.

"Where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, * * * it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party." A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 303, 69 L. Ed. 597.

The same doctrine has been repeatedly held by this court. Anderson v. Southern Ry. Co. (C. C. A.) 20 F.(2d) 71; Lamborn

v. Woodard (C. C. A.) 20 F.(2d) 635; Flannagan v. Provident Life & Accident Ins. Co. (C. C. A.) 22 F.(2d) 136; Lyon v. Travelers' Protective Ass'n of America (C. C. A.) 25 F.(2d) 596; Livingston v. Atlantic Coast Line R. Co. (C. C. A.) 28 F.(2d) 563; Standard Oil Co. v. Cates (C. C. A.) 28 F.(2d) 718.

Reversed.