974

## BURNETT v. AMALGAMATED PHOSPHATE CO.*

### No. 8735.

Circuit Court of Appeals, Fifth Circuit.

May 24, 1938.

Reaves and Doyle E. Carlton, both of Tampa, Fla., and R. B. Huffaker and M. H. Edwards, both of Bartow, Fla., for appellant.

Thos. B. Adams, of Jacksonville, Fla., and Chester H. Ferguson and Wm. H. Jackson, both of Tampa, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

*Rehearing denied July 12, 1938.

HOLMES, Circuit Judge.

This was an action by appellant for the negligent death of her husband. The first trial resulted in a verdict for her, which was set aside. On the second trial, the court directed a verdict for appellee, and this appeal is from the judgment entered thereon.

Appellant's husband, Elmer N. Burnett, was employed by appellee on and before January 31, 1934, as chemist in its phosphate mining operations at Brewster, Florida. As such chemist he was in complete charge of the laboratory where samples of the phosphate were analyzed. This laboratory was housed in a separate building and was equipped with a gas generating plant for the production of gas from gasoline, to be used as a heating agency in the laboratory. It consisted of a drum partially to be filled with gasoline, equipped with means for circulating air through the gasoline so that a mixture of evaporated gasoline and air would be formed and, under slight pressure, would pass from the drum through tubes to a water trap, which prevented any backward movement of gas or air and likewise acted as a safety device to prevent flames from the burners passing back into the drum. Tubes connected the burners with the gas compartment of the water trap whereby the gas was supplied for laboratory work.

One Payne was foreman of the machine shop operated by appellee in connection with its mining operations. The machine shop was likewise housed in a separate building, one corner of which was enclosed and used by Payne as an office. Several days prior to the date in question, Payne began the construction of a small furnace to be used by him in his office for quick heating of metals to be worked. As conceived and constructed by him, this device consisted of a five gallon can in which a quantity of gasoline would be placed to be vaporized by passing pure oxygen from a container through a tube, the end of which would be immersed in the gasoline. The evaporated gasoline and pure oxygen would collect in the top of the can and pass through tubes directly to the burner in the furnace. Payne consulted Burnett about this device, and it appears that Burnett said that it should produce enough heat to raise the temperature of two gallons of water to boiling point in five minutes.

On the day in question, Payne had completed the apparatus and was trying to operate it when Burnett came into the office for the purpose of giving detailed directions for fashioning a scoop which Burnett was to have Payne make for use in the laboratory. Payne called Burnett's attention to the device and told him he was having difficulty in making the burner produce the proper flame. Burnett showed him how to adjust the sleeve on the burner, and both watched the operation of the device for about fifteen minutes, during which time its structure and mode of operation were discussed. Payne was called to a telephone just outside the office, and both men left and were gone for about ten minutes. When they returned, Payne began preparation of a work order for the scoop, and had his back turned to the device. Burnett approached the burner, asking if Payne had turned it off. No one knew whether Burnett relighted the burner or not, but, about the time he reached it, an explosion occurred within the can containing the gasoline, causing the injuries to him which resulted in his death.

Appellant's declaration in several counts charges appellee with negligent failure to provide a safe place to work, negligent experimentation with a dangerous device without expert advice, and failure to warn of the dangerous situation. Appellee pleaded the general issue, that Burnett and Payne were fellow servants, assumption of risk, contributory negligence, and that it had no notice and was not chargeable with knowledge of the acts of Payne in constructing and using the device, because, in so doing, Payne acted without the scope of his employment, without authority from or notice to appellee, and on a venture of his own.

On the trial it was shown that Burnett was not a chemist in the general sense, having learned the routine analysis used by appellee and become proficient therein without having pursued the study of the science beyond the needs of that work, and that, with such training, he would not necessarily have known the chemical reaction involved in the combustion of hydrocarbons, or appreciated the danger in attempting to operate the device which exploded. However, this is refuted to some extent by the testimony that he undertook to tell Payne something of the heat value of the gas to be produced and the capacity of the furnace constructed. Either he knew something of the devices and substances used, or he misled Payne to believe that he did.

Laying aside the question of agency and the fellow-servant relationship between Payne and Burnett, it appears that the ver-

dict was properly directed in appellee's favor. If it be assumed that Burnett was assisting Payne in the venture, and that he held himself out as an expert, or one having technical knowledge of the subject, neither Payne nor appellee is shown to be guilty of any negligence in connection with the unfortunate accident. Under such circumstances it was Burnett's duty to know and appreciate the danger and to warn Payne. If he did not know the principles involved and understand the device to be used, he should have made this fact known and advised calling in an expert. Payne was not negligent in relying on the advice of one known to him as a chemist and who had constantly used a device operating on the same basic principle. In this situation, and with Burnett actually manipulating the device, his own acts, and not those of Payne or the master, were the proximate cause of the injury; and this was without the concurrent negligence of anyone.

If it be conceded that Burnett knew no more than the average person about the chemistry of hydrocarbons, and that he used the gas machine in the laboratory without acquainting himself with the principle on which it worked and the necessity for safety devices, he was not relieved of the duty to exercise reasonable care and caution for his own safety. It is common knowledge that gasoline is an explosive substance capable of causing serious damage. From the expert testimony in this record, it is made to appear that its use in proper appliances and under suitable circumstances is not dangerous. It is common knowledge that gasoline is dangerous; technical knowledge is necessary to apprise one of the conditions which render it safe. Lack of technical knowledge does not relieve from the duty arising from common knowledge. Burnett is presumed to have known that there was some danger of explosion; that the apparatus was an experimental structure erected by Payne without expert advice; and that his own conduct in remaining in the office and attempting to operate it exposed him to the danger inherent therein. He came to his death as a direct and proximate result of his own negligence. Under such circumstances there should be no recovery against appellee. Butler v. Frazee, 211 U.S. 459, 29 S.Ct. 136, 53 L.Ed. 281; Heffner v. Sprague Electric Co., 3 Cir., 177 F. 897; Anderson v. Southern R. Co., 4 Cir., 20 F. 2d 71; Standard Oil Co. v. Martin, 8 Cir., 21 F.2d 912; Consolidated Textile Corp. v. Shipp, 4 Cir., 41 F.2d 479; Kansas City So.

R. Co. v. Williford, 5 Cir., 65 F.2d 223; Central Vermont Ry. v. Sullivan, 1 Cir., 86 F.2d 171; Aqua System, Inc., v. Kodakoski, 5 Cir., 88 F.2d 395; Kuptz v. Ralph Sollitt & Sons Construction Co., 5 Cir., 88 F.2d 532.

The judgment of the district court is affirmed.