Argued May 18; affirmed June 8, 1943

# MOTEJL *v.* GREENWOOD ET AL.

(138 P. (2d) 216)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Randall B. Kester,* of Portland (Maguire, Shields, Morrison & Biggs, of Portland, on the brief) for appellants.

*Arthur I. Moulton,* of Portland (Moulton & Davis and Earl Fewless, all of Portland, on the brief) for respondent.

KELLY, J. While preparations were in progress for unloading six logs from the auto truck belonging to defendant Hannah Greenwood, of which truck defendant, Harry Hansen, was the driver, two of the logs fell off of the truck upon plaintiff's decedent, Albert Motejl, Jr., so severely injuring him that as a result thereof he died.

The logging operation, consisting in part of the loading, delivery and unloading of the logs above mentioned, was that of A. W. Bell, who was a defendant in this action.

Bell was engaged in cutting logs in the woods, some distance from Timber, Oregon. He owned and operated machinery in the woods for the loading of saw logs onto trucks, and a donkey engine to haul the loaded trucks up a grade so steep that the trucks could not negotiate it under their own power. He entered into a contract with defendant, Hannah Greenwood, pursuant to the terms of which she furnished trucks and drivers to haul the loaded logs from the woods to Timber.

Bell also entered into a contract with the deceased, Albert Motejl, Jr., and his brother Otto Motejl, pursuant to which they assisted in unloading the logs from the trucks and loading them onto railway cars.

Ordinarily, in loading the logs, first, as many logs as the bunks of the truck would accommodate were placed side by side on the bunks. Because the logs were round, there would be a hollow space, termed a saddle, between each pair of logs along side each other. Additional logs were placed in these saddles and thus a load would be completed by placing a log known as a "peak" log on top of the saddle formed by the last pair of logs on the load. The load in suit consisted of six logs three of which were lying on the bunks, two were orginally fitted into the saddles formed by these three and one was fitted into the saddle formed by the two. A binder chain was fastened around the load of logs about midway between the ends thereof.

From the place where the logs were loaded upon the truck for a distance of approximately a thousand feet the road was so steep that the truck would not negotiate it on its own power. For that reason, a cable was wrapped around the whole load to which one end of a line was fastened, which line extended over the top of the cab of the truck to a donkey engine at the top of

the hill; and by the power of the donkey engine the truck with its load was pulled up the hill and the cable wrapped around it was then removed. The truck, carrying its load, was then driven about two miles to a place known as Round Top Camp where the logs were scaled. From the scaling·point to the unloading station at Timber is a distance of about three miles. At the unloading station the deceased and his brother Otto maintained a gas-powered motor operating a drum around which was wrapped a cable. This cable extended through a block at the end of a gin pole some twenty feet in height and thence downward to a spreader bar approximately six feet long, at each end of which was a hook or ring to which one end of a cable could be attached. Each of two cables was attached at one end firmly in the ground at such a distance from this gin pole that the loaded truck could be spotted in the space intervening between such cable ground-fastenings or attachments and the gin pole. These two cables were of sufficient length and so arranged that the loose ends thereof could be attached to the ends of the spreader bar. When the truck reached the unloading station, it was driven alongside the hoisting device under the gin pole and brought to a stop. Plaintiff's decedent crawled under the truck in an attempt to pass the loose ends of the ground-fastened cables over the coupling reach of the truck and under the logs and bring those loose ends to, and fasten them upon the ends of the spreader bar so that, when, by operating the drum, the spreader bar would be raised and the cables would be so tightened against the side of the logs as to roll the logs off the truck.

Before plaintiff's decedent had succeeded in his attempt to bring the loose ends of the ground-fastened

cables up to the spreader bar, two of the logs rolled off of the truck upon him causing him to be fatally injured.

At the conclusion of plaintiff's case in chief, an order of nonsuit was entered as to the defendant Alfred W. Bell.

It is alleged in plaintiff's complaint in effect that in hauling said load of logs up the steep incline heretofore mentioned the logs making up said load were disarranged and the saddles formed by the lower logs were thrown out of position and the upper logs of said load were caused to rest in an infirm and unstable position so there was great and extreme likelihood that the same would fall and roll from said load whenever the binder chain used in connection with said load was removed, and by reason of the disarrangement of said logs and by reason of infirm and unstable position in which the lower logs were caused to rest in and upon said load, it was highly dangerous and hazardous for any person to perform work around or in proximity to said load, particularly, if the binder chain thereof were released; all of which was well known to the defendants.

Plaintiff, in her complaint, alleges that defendants, Greenwood and Hansen, well knew that the logs of said load had been disarranged and that the same were in a dangerous and hazardous condition, and that there was great and iminent danger that the logs would roll from said load and injure persons working about the same.

Said defendants, Greenwood and Hansen, being thus charged by plaintiff with such knowledge, plaintiff in her complaint, further sets forth four specifications of negligence with which she charges said defendants, Greenwood and Hansen, as follows:

(1) Said defendants failed to rearrange the logs of said load and reform the saddles designed to be formed

by the lower logs thereof, and replace said upper logs in said saddles so as to prevent said logs from rolling from said load.

(2) Said defendants carelessly and negligently detached said binder chain and loosened one end thereof so that the usefulness and effectiveness thereof were lost, and said logs were released from the restraining influence thereof at a time when the decedent, Albert Motejl, Jr., in the performance of his portion of the work of unloading said logs, was engaged in passing the unfastened ends of said ground-anchored cables under the said logs in order to attach said loose ends to said spreader bar, and while decedent obviously would be in a position of great danger if said logs should roll from said truck.

(3) Said defendants carelessly and negligently failed to cause said binder chain to be left in place and firmly attached so as to restrain said logs from rolling off of said truck until decedent had completed his work and reached a place of safety away from said load of logs.

(4) Said defendants carelessly and negligently failed to warn or notify said decedent, or his copartner, of the dangerous and hazardous condition of said load of logs and of the extreme danger and likelihood that the same would roll from said truck.

The answer of defendant, Hansen, denies the allegations of the complaint charging him with negligence and alleges that decedent was negligent in the manner in which he caused said logs to be unloaded, in removing the binder chain before making fast and taking up the slack in said unloading cables. Both of the answers of defendants, Greenwood and Hansen, charge negligence on decedent's part, in permitting bark, dirt, chips,

splinters and other debris to remain on said rollway thereby causing said logging truck to remain level instead of tilting in the direction the load was intended to fall.

The answer of defendant, Greenwood, denies the allegations of the complaint charging her with negligence and in addition to the allegation that decedent permitted bark and other debris to accumulate on the rollway, alleges that decedent was a man of mature years and had years of experience in the work in which he was engaged; that he well knew, understood and appreciated the risk, danger and hazard involved in unloading logs from a truck and appreciated the risk, hazard and danger of remaining beside a load of logs when the binder chain was not made fast, and that the injuries which resulted in the death of decedent were the result of risks well known, understood, appreciated and assumed by the defendant. The replies of plaintiff put in issue the affirmative defense of defendants.

The questions before us on this appeal are, first, whether there is any substantial evidence that defendants Greenwood and Hansen were negligent as alleged in plaintiff's complaint. To state it somewhat more simply, the first question we will consider is whether there is any substantial testimony that defendant Hansen was negligent in whole or in part as alleged in the complaint. The negligence of Hansen is imputable to defendant Greenwood.

■ Mr. O'Rourke testified that, while scaling the logs in suit, he observed that they had become displaced and that he called the attention of defendant, Hansen, to that condition. The testimony is clear that when a load of logs has thus become disarranged and the driver of the truck, upon which they are loaded, is

aware of the fact that the logs have been bunched or disarranged, it is usual and customary for the driver to inform and notify those who are to unload them of that fact. There is testimony to the effect that Hansen told witness O'Rourke that he did not inform decedent of the disarranged condition of the load because he forgot it. There is testimony to the effect that defendant, Hansen, removed the binder chain when he knew that decedent was under the truck seeking to place the loose ends of the ground-anchored cables over the reach pole of the truck under the logs thereon and attach those loose ends to the spreader bar. In other words, there is evidence of a substantial character of the negligence charged on the part of defendant Hansen. It is equally true that there is evidence tending to prove that the negligence of Hansen was the proximate cause of decedent's injury and death.

■ As to the charge of assumption of the risk on decedent's part, the most that can be said is that the testimony is conflicting in that regard. We think that the testimony does not support the charge that decedent removed the binder chain. As to the charge that decedent caused the bark and other debris to remain on the rollway, it does not appear that such a condition had any effect in bringing about the tragic death of decedent.

■ Where there is substantial testimony upon which the judgment of the trial court may properly rest, this court will not disturb the judgment.

In the oral argument, defendants stressed the plea that plaintiff's decedent was contributorily negligent as a matter of law for the reason that he, himself, was in complete control, charged with the duty to make it safe and the responsibility, as to when the chain should

be removed, was his own. Defendants say that, if decedent permitted the chain to be removed while he was in a dangerous position and that removal was a cause of the accident, decedent's own negligence precludes his recovery.

As stated, there is substantial evidence that defendant, Hansen, removed the binder chain. The record supports the conclusion that the removal of the chain occurred after decedent had crawled under the load and was attempting to place the loose ends of the ground-fastened cables where they could be attached to the spreader bar. There is no testimony that Hansen was directed, requested, or in any way expressly permitted by decedent to remove the binder chain. On the contrary, the testimony supports the conclusion that Hansen removed the binder chain of his own volition when he knew that decedent would be in grave peril if a log should roll off of the right side of the load.

Moreover, we do not construe the testimony, as supporting defendant's contention, that decedent was in complete control of the unloading operation. It was an operation wherein the driver of the truck, as well as decedent, had a duty to perform and the record discloses an avowed inclination on the part of both parties to cooperate. The binder chain belonged to defendant Greenwood as part of the equipment of the truck. The duty rested upon defendants to deliver the logs in suit in a condition reasonably safe for unloading. It was the duty of the carrier to refrain from taking any action which, in the opinion of an ordinarily prudent person, would imperil decedent or injure him.

■ Both parties moved for a directed verdict and the trial judge had no alternative other than to comply. The trial judge decided the issues including that of

decedent's alleged contributory negligence. Whether a person, in the position in which decedent is shown to have been, would have discovered the disarranged condition of the load or would have relied upon the fact that where such condition is known to the driver the driver usually gives warning thereof, is a question of fact which the trial court has adjudicated; and we think there is substantial testimony in support of that adjudication.

Crossing cases are cited by defendants to the point that one is presumed to have seen that which is plainly visible. Under the facts of the instant case, the duty of decedent to look at the load of logs to ascertain whether they were disarranged in the absence of any warning by the driver, who customarily gave such warning when that condition was known to him, is not as imperative as the duty upon one about to cross a railroad track to look for and, if there is an approaching train, to see it.

■■ To the point that one in charge of an operation cannot recover for an injury caused by a condition under his own control, cases are cited wherein such exclusive control appears on the part of the plaintiff. As stated, we think it is a question of fact in the case at bar whether decedent had exclusive control of the unloading operation and that there is testimony from which an inference or deduction may reasonably be drawn that exclusive control was not vested in decedent.

Defendants cite two cases involving the operation of unloading poles from a flat car. These cases are *Southern Ry. Co. v. Edwards,* 44 F. (2d) 526, and *Anderson v. Southern Ry. Co.,* 20 F. (2d) 71. In these cases employees of the consignees were engaged in unloading the poles when the accidents occurred. There

is nothing in the record of either case indicating that any part of the operation of unloading, or for that matter loading the poles, was performed or attempted by the carrier.

In the Edwards case, the poles were loaded on a flat car by the shipper at a point on the line of the Mobile & Gulf Railroad. The car was received by the defendant carrier at a station on said defendant's line and transported to its destination.

In the Anderson case, the car in question was shipped from Brunswick, Georgia, over another line of railroad, but was accepted by defendant and transported over defendant's line to Aiken, South Carolina. There it was placed on a side track for the purpose of being unloaded by the consignee. In the case at bar, the testimony is to the effect that usually the driver of the truck, an employee of defendant Greenwood, removed the binder chain which obviously comprised part of the operation of unloading the logs.

To the point, that there is no obligation to warn of an obviously dangerous condition, a number of cases are cited. That rule is applicable to defendants as well as plaintiff's decedent. In the instant case, decedent would not have been injured if the binder chain had not been removed. Defendant Hansen had been told of the disarrangement of the logs. If the disarrangement was obvious, both the warning he had received and the obvious fact itself should have prevented him from removing the binder chain. In that state of the record, we are unable to concur with defendants in the suggestion that decedent was negligent in not telling Hansen not to remove the binder chain. In thus treating the matter, we are not unaware that Hansen said that decedent removed the binder chain, but the evi-

dence on that point is conflicting and the trial court found that Hansen removed it. We are bound by the finding of the trial court. Decedent had a right to rely upon the assumption that Hansen would not be so recklessly unmindful of decedent's exposure to the direful result as to remove the binder chain.

In the reply brief of appellants, for the first time, it is charged that plaintiff's complaint seeks to recover for the benefit of the estate and not for the widow. We cannot accept this construction of the record. It is true that, in one place in the complaint, it is so stated; but we are convinced that the use of the word "estate" in that allegation instead of the word "widow" was an inadvertence, if not a mere typographical mistake.

The judgment of the trial court is affirmed.