## SKAGGS SAFEWAY STORES, Inc., v. DUNKLE.

### No. 8987.

Circuit Court of Appeals, Eighth Circuit.
April 23, 1931.

WOODROUGH, District Judge, dissenting.

Roland Max Anderson, of Lincoln, Neb. (Carl E. Sanden, Loren H. Laughlin, and Bernard S. Gradwohl, all of Lincoln, Neb., on the brief), for appellant.

M. H. Wittstruck, of Lincoln, Neb., for appellee.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge.

This is a personal injury action in which the appellee as plaintiff brought suit against the appellant to recover damages suffered by appellee as the result of an automobile collision. The parties will be referred to as they appeared in the lower court. At the time of receiving his injuries, the plaintiff was riding with his brother in the driver's seat of a truck driven by his brother. They were traveling west on the north side of Holdrege street, an arterial highway in the city of Lincoln, Neb. Clyde B. Anderson, in the employ of the defendant as its manager, was driving a Buick sedan automobile east on the south side of this same street. Plaintiff and his brother desired to cross to the south side of the street for the purpose of securing gasoline from a filling station located on that side of the street. Plaintiff's brother, who was driving the car, started to turn southward near the middle of the block, but a warning signal from a car approaching from behind caused him to swing back into the line of traffic and permit the approaching car to pass. He again signaled and turned south to cross to the filling station, having shifted his gears to low. This filling station was located a little west of the middle of the block, was set somewhat back from the curb line on the south side of Holdrege street, and had a driveway with three entrances, two of which entered from Holdrege street, one entering somewhat to the west of the station and the other to the east, while a third entrance came from Twenty-First street, which intersected Holdrege street on the west side of this property, so that the filling station and driveway occupied the northwest corner of the block. Holdrege street was paved with brick.

The ordinances of the city of Lincoln forbade the crossing of a street in the middle of a block, and required one to go to the street intersection before crossing from one side of the street to the other. When plaintiff and his brother first attempted to cross the street, they were some 30 or 40 feet east of the east entrance to the driveway. When they made their second attempt to cross the street, they were at a point directly opposite the east side of the east driveway entrance, and, according to the plat, the east side of this east entrance was 108 feet east from the intersection of Holdrege street with the east curb line of Twenty-First street. They had observed Anderson when they first attempted to turn to the south, and when they again attempted to go south they observed him coming at a rate of speed estimated by them at from 45 to 50 miles an hour. Their truck was moving slowly and could have been stopped within 3 feet, and, when it had reached a point where its front end was about 4 feet south of the center of Holdrege street, which was 30 feet in width, they observed Anderson's car approaching at what they described as "a terrific speed," whereupon the driver of the truck took his foot off the brake and "gave it the gas" and attempted to cross the street in front of Anderson's car, resulting in a collision at the south curb line of Holdrege street, where the street joins the east driveway entrance to the filling station.

The defendant offered evidence to the effect that Anderson was traveling about 25 miles an hour; that he first saw plaintiff's truck when it was within 25 to 40 feet in front of him; that he immediately applied his brakes and turned his car to the right, but frost on the pavement caused it to skid into the side of plaintiff's truck. He estimated the distance between his car and the truck, when he first observed it, from 25 to 40 feet. On cross-examination, however, he indicated that he observed the truck when his car was just crossing the east line of Twenty-First street. There was testimony to the effect that a car moving at 25 miles an hour, equipped with four-wheel brakes, could be stopped on this pavement in 32 feet. There was testimony that a Chevrolet car equipped with four-wheel brakes, traveling 25 miles an hour on this pavement on the morning of the collision, was stopped in 30 to 40 feet; the witness so testifying having at a former trial testified that he stopped the car in 30 feet. There was no evidence to show the distance within which a car equipped with four-wheel brakes, going at a speed of from 40 to 50

miles an hour, could have been stopped on a pavement of this sort.

The court overruled defendant's motion for a directed verdict interposed at the close of all the testimony, and sent the case to the jury on the doctrine of last clear chance or discovered peril, limiting the jury to the question as to whether or not Anderson, in the exercise of ordinary care, could have stopped his car after observing the truck in front of him. The instructions as given were not excepted to. In its instructions, the court, among other things, said: "As I say, there is no sufficient evidence of any negligence of the defendant or Mr. Anderson in any act or any omission, which is sufficient to base a recovery upon before the time that the Ford truck got across the middle line of Holdrege Street just before this collision and got into the pathway of the cars going east on the south side of Holdrege Street. So the speed of Mr. Anderson's car, or any other act or any other omission of his before that time is to be disregarded by you as any ground for recovery in this case."

Again the court, in its instructions, said: "There is no evidence that Mr. Dunkle, the plaintiff, was guilty of any contributory negligence after the time that the Ford truck got into the pathway of automobiles going east on Holdrege Street. So you are to eliminate all question of whether or not the plaintiff was guilty of contributory negligence, but the negligence of the defendant as represented by Mr. Anderson driving one of its cars at the time of the accident, is limited by the pleadings in this case, and you are not authorized to find any negligence except as it is pleaded and the negligence of Mr. Anderson at that time as pleaded, is limited by the evidence that has been produced in this case, and therefore you are bound to consider no question of his negligence except as limited both by the pleadings and by the parties and the question is reduced to this: If Mr. Anderson saw the Ford car in a position of danger ahead of him on the south part of Holdrege Street, the part that east bound autos ordinarily traveled, and after seeing this Ford car in such a place of danger, did Mr. Anderson negligently fail to properly operate his Buick automobile, not in every possible way, but in the one way of using reasonable care or failing to use reasonable care, I should say, to endeavor to stop before hitting the Ford car, and, of course, whether that negligence caused the plaintiff's injuries and damages."

These instructions, not having been excepted to, became the law of the case.

Hard & Rand, Inc., v. Biston Coffee Co. (C. C. A.) 41 F.(2d) 625; Yelloway, Inc., v. Hawkins (C. C. A.) 38 F.(2d) 731; Security Life Ins. Co. v. Brimmer (C. C. A.) 36 F. (2d) 176. There is therefore presented only one issue, and that a very narrow one. Was there substantial evidence from which the jury might properly have concluded that Anderson, after observing the plaintiff's truck, could have stopped his car in time to avoid the collision? In considering this question, we must accept as true all evidence supporting plaintiff's contention, and assume that it proved all that it reasonably may be found sufficient to establish, and if, when so considered, fair-minded men might honestly draw different conclusions from the proof, then the question was a fact question to be settled by the jury. Mutual Life Ins. Co. v. Hatten (C. C. A.) 17 F.(2d) 889; Crookston Lbr. Co. v. Boutin (C. C. A.) 149 F. 680; United States Can Co. v. Ryan (C. C. A.) 39 F.(2d) 445; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

When the plaintiff rested his case, there was no substantial evidence warranting a finding that Anderson might have stopped his car in time to have avoided the collision. At that time the undisputed evidence was to the effect that Anderson was driving his car at a speed of from 45 to 50 miles an hour, and there was no substantial evidence that he observed this truck at a sufficient distance ahead of him to enable him to stop his car in time to have avoided the collision. The evidence of the defendant, however, was to the effect that the car was not being driven at a speed of from 45 to 50 miles an hour, but at a speed of about 25 miles an hour, and there was evidence from which the jury might have believed that the car could have been stopped in a distance of from 30 to 40 feet. There was also the evidence of Anderson to the effect that, when his car was crossing the intersection of Holdrege street with the east line of Twenty-First street, he observed this truck. It is true, he estimated that it was then from 25 to 40 feet distant, but it appears from the undisputed evidence, as a physical fact, that the collision occurred at a point at least 100 feet east from this intersection. The witness might well have been in error as to his estimate of the distance, but there could be no mistake as to the physical facts, to wit, the point where the cars collided, and the point of intersection of these two streets. It is observed, too, that Anderson estimated the distance between his car and the plaintiff's car, when first observed by him, at from 25 to 40 feet. The

jury might, under the evidence, have found that his car could have been stopped within 40 feet. In view of the verdict of the jury, we must assume that it found that the car was going 25 miles an hour and that Anderson observed the truck as he crossed the intersection of Twenty-First street, at which time the plaintiff's truck was at least 100 feet in front of him. As already observed, there was direct evidence that a car equipped with four-wheel brakes, going at a speed of 25 or 30 miles an hour, could be stopped within 32 feet. On the issue submitted under instructions which were not excepted to, there was therefore substantial evidence to sustain the verdict of the jury.

It is urged by defendant that, notwithstanding the fact that its employee Anderson may have failed to exercise ordinary care to avoid the accident after becoming aware of plaintiff's danger, yet there could be no recovery if the negligence for which the plaintiff was responsible concurred and co-operated with that of the defendant, and contributed to the injury complained of. Accepting this contention as a proper statement of the law, it is not available to the defendant here, because the court specifically instructed the jury that there was no evidence that plaintiff was guilty of any contributory negligence after the time that his truck got into the pathway of the defendant's car, and this instruction, as has already been observed, was not excepted to. There is therefore no question of concurrent negligence presented by this record.

The judgment of the lower court is affirmed.

WOODROUGH, District Judge (dissenting).

I concur fully in the conclusion that the plaintiff failed to make out a case for the jury, but I do not agree that one was made out by defendant's evidence. The majority of the court finds that the jury could infer from the testimony of defendant's witness Anderson that Anderson was at the east side of the intersection of Holdrege and Twenty-First streets when he first saw the truck in which the plaintiff was riding. It is demonstrated that the distance was at least 108 feet from there to the point of collision, and the conclusion is that Anderson could have stopped in that distance if he had tried as hard as he ought to—at least the jury could so find. I think the only fair inference from Anderson's testimony is that he was only from 25 to 40 feet away from the plaintiff's car when he first saw it, and did not have

time to stop before the collision. He so testified both on direct and cross examination very positively, and that he immediately slammed on his brakes, and the skid marks on the frosty pavement corroborated him. If that were all of his testimony, of course there would be no difference of opinion here.

What happened, however, was this: Anderson was not in Lincoln when he gave his testimony, but some 1,500 miles away in Seattle, Wash. He could not remember "the location and distances of the station grounds, driveways and streets" about the scene of the accident, and said so. He had it perfectly clear in mind just exactly how the accident happened, the sudden looming up of the truck 25 to 40 feet in front of him, the immediate instinctive slamming on of his brakes, and the crash, but not the map of the location; and there was nothing unnatural about that. Equally according to nature the lawyer examining him for the plaintiff would not let the matter rest that way. So the lawyer drew up a map of what and where he imagined the physical things like the oil stations and entrances and curbs and streets and intersections were thereabouts. Doubtless with the best intentions in the world his map was utterly false and misleading. Particularly it showed the point of collision at the entrance to the oil station to be 25 to 40 feet (and a car length) away from the east line of the street intersection. Now solely on the basis of that false map the lawyer got Anderson to say that he was at the intersection when he saw the plaintiff's car and peril, and as the examination of the witness proceeded there were drawn on the false map two squares to represent automobiles and a line between them to indicate distance marked "25 to 40" (meaning that the cars were 25 to 40 feet apart when Anderson saw the plaintiff), and on this map the tail end of Anderson's car was indicated to be right at the east line of the street intersections.

It is from this slip in Anderson's testimony so occasioned that we let the jury infer he contradicted himself on the question of what room he had to stop in. We have the true map before us, and we see that it is really 108 feet from the intersection to the point of collision, and so we say the jury could conclude that the 25 to 40 feet Anderson so positively remembered and swore to is false, and the truth to be gotten from his testimony is that he was 108 feet away and just went ahead for 108 feet and smashed up his own and the plaintiff's car when he did not need to. It is true there was expert testimony that a car going at the speed Anderson estimated

his car to be going could be stopped by application of the brakes a matter of 8 feet quicker than Anderson says his car was stopped by the collision. This collision took place early in the morning, when there was frost on the ground, and the car skidded some. The seeming contradiction in Anderson's testimony and this testimony together amount to no more than a mere scintilla of evidence against him.

My reason for dissent is ,that it seems to me there is a misapplication of the last clear chance doctrine. That humane doctrine has been beneficent in railroad collision cases. It doubtless has its place in cases of automobile collision, but not where its application shocks common sense as it does here. Auto drivers know that collision between their cars imposes mutual perils. They all naturally and instinctively try to escape it when they see it imminent. We ought not to assume or justify a jury in assuming that Anderson was inhumanly void of the instinct· to save himself and his car. There is no persuasive proof of it. Of course he tried to stop his car when he saw he was going to smash. There is no real doubt of it. Plaintiff's poverty availed for him against the chain stores and outweighed the evidence. A doctrine that is very wise and good has, in my humble judgment, been turned to upset good sense. This court ought to assert its necessary power against a wrong verdict.