### GRANT STORAGE BATTERY CO. v. DE LAY.

No. 10690.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1937.

David A. Fitch, of Omaha, Neb. (William C. Fraser, C. F. Connolly, Norris Brown, and Ralph M. West, all of Omaha, Neb., on the brief), for appellant.

Kelso A. Morgan, of Omaha, Neb. (Gerald E. La Violette and Ben Kazlowsky, both of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an action for personal injuries, in which the appellee was plaintiff below. We shall refer to the parties as they appeared in the lower court.

In his amended petition, plaintiff alleged that at all times therein mentioned he was employed by the defendant in its storage battery factory in Omaha, Neb., and that on or about January 13, 1934, while so employed, he was compelled to leave such employment by reason of injuries received; that during his employment he was required to work at a plate poker rack, where fine metallic lead dust accumulated off the plates which were used in the making of storage batteries; that in the process of poking, in which he was employed, large volumes of metallic lead dust were created and mingled with the air in the room where plaintiff was working, which lead dust was inhaled by him, and as a result of the inhaling of the poisonous, obnoxious, and dangerous metallic lead dust throughout the period of his employment, and the accumulated effect of the gradual absorption of the poisonous metallic lead dust into his system, there resulted a lead poisoning to his body and system, which proximately caused the injuries described in his amended petition; that the defendant did not keep its premises clean, but allowed said poisonous metallic lead dust to accumulate in the air of the factory, causing the air to become exhausted and impure, and to accumulate on the floor and on the bench where plaintiff worked and in every other place where plaintiff was required to be in defendant's factory; that the occupational injuries which he sustained, resulting in lead poisoning, were the direct and proximate result of the negligence of defendant in particulars set out in his amended petition. Knowledge of these conditions on the part of the defendant was alleged, and the lack of knowledge on the part of the plaintiff of the dangers arising from such condition.

It appears from the record that plaintiff was employed by defendant in its factory during a period of five or six weeks in the fall of 1930, and from the first of June, 1933, to the first part of June, 1934.

At the close of all the evidence, defendant interposed a motion for a directed verdict, specifically challenging the sufficiency of the evidence to prove any negligence which was the proximate cause of plaintiff's injuries, or to show that it had violated the statutory enactments of the State of Nebraska relative to providing a fan or other mechanical device to carry away dust or fumes or other impurities accumulating in the factory where plaintiff was employed, and on the ground that the evidence showed that plaintiff's injuries, if any, arose or resulted from the risks and dangers of his employment, which he assumed. The motion was overruled, and the case submitted to the jury upon instructions to which neither party excepted. The jury returned a verdict in favor of plaintiff in the sum of $11,000, upon which judgment was entered.

On this appeal defendant relies upon the following alleged errors: (1) The ruling of the court in denying defendant's motion for a directed verdict; (2) the ruling of the court in denying defendant's motion to withdraw from the consideration of the jury the charge that defendant failed to warn plaintiff of the dangers of his employment; and (3) the ruling of the court in refusing certain instructions requested by defendant.

In considering the question as to whether the court erred in denying defendant's motion for a directed verdict, the instructions of the court are important because they were not excepted to by either party, and hence became the law of the case. Skaggs Safeway Stores v. Dunkle (C.C.A. 8) 49 F.(2d) 169; Hard & Rand, Inc., v. Biston Coffee Co. (C.C.A. 8) 41 F.(2d) 625; Security Life Ins. Co. v. Brimmer (C.C.A. 8) 36 F.(2d) 176; Paf Mfg. Co. v. R. L. Polk Co. (C.C.A. 8) 72 F.(2d) 33; United States v. Nickle (C.C.A. 8) 70 F.(2d) 873. In its instructions, the court withdrew from the consideration of the jury all claims of negligence, except as follows: "Failure to provide a safe place for the plaintiff to work, in that—(a) Defendant failed to provide a fan, or other mechanical device as would substantially carry away all dust or fumes or

other impurities, which accumulated in the workroom, or place where plaintiff was working, and failed to provide proper ventilation in the room where plaintiff was required to work; (b) failed to furnish plaintiff with a proper safe respirator or appliance to be worn over the mouth and nose to protect the plaintiff from dangerous lead dust and fumes; (c) failed to fully caution the plaintiff as to the danger of lead poisoning, and to fully advise him as to the serious consequences that might result therefrom. * * * "

It was the claim of plaintiff that the statutes of Nebraska imposed upon defendant the duty of providing fans or other mechanical devices to carry away the dust or fumes or other impurities from the workroom where plaintiff was required to work. The defendant, on the other hand, contended that these statutes had no application to the character of industry in which it was engaged, and it now urges that there was no proof offered tending to show that such devices were practical, or that they would be effective if installed. As to the effect of the statutory provisions the court instructed as follows:

"Now, you are instructed, gentlemen, that under the facts in this case it was the duty of the defendant to exercise ordinary care to provide plaintiff with a reasonably safe place in which to perform the work for which he was employed, and appropriate appliances and equipment for the protection of plaintiff's health against injurious consequences ordinarily resulting from the operations in defendant's business in which plaintiff was employed. * * *

"It is charged first in this case that the failure to provide a safe place for the plaintiff to work consisted of the failure to provide a fan or other mechanical device such as would carry away all the dust or fumes or other impurities from the workroom. You are instructed that the statutes of the State of Nebraska provide that in every mill or mechanical establishment, where any process is carried on by which dust or fumes are caused which may be inhaled by persons employed therein, there shall be provided a fan or other such mechanical device as will substantially carry away all dust or fumes, subject to the approval of the Department of Labor. Whether or not the conditions in the defendant's factory where plaintiff was employed, considering the nature of the operations performed therein, and the conditions arising from the performance of the work, were such as to require the installa-

tion of fans or other mechanical devices for the purpose of purifying the air in such place, is a question for you to determine from a consideration of all the evidence in the case bearing upon that subject; the failure to provide such devices, of itself, does not establish negligence in this case, but is a matter to be taken into consideration by the jury in determining whether or not the defendant exercised ordinary care to provide a reasonably safe place in which plaintiff was required to work. And if, upon consideration of all the evidence, including the statute in question, you find that ordinary care required the installation of such devices in order to render the place of work reasonably safe, and defendant negligently failed to furnish such proper devices, then you would be justified in finding defendant negligent in this particular."

In view of the jury's verdict, we must assume that it found this issue in favor of plaintiff, and as the instructions were not excepted to, the question first to be determined is whether there was substantial evidence to sustain the verdict on this issue.

In Cropper v. Titanium Pigment Co. (C.C.A. 8) 47 F.(2d) 1038, 78 A.L.R. 737, and in Wagner Electric Corp. v. Snowden (C.C.A. 8) 38 F.(2d) 599, we considered somewhat similar statutes of the State of Missouri, and we there referred to the fact that the Supreme Court of Missouri had held that a violation of the statutes there in question constituted negligence per se. The court in the instant case did not so instruct, but apparently being in doubt as to whether, under the circumstances of this case, it was the duty of defendant to install such devices, left that question to the jury. If it was the duty of defendant so to do, then its failure in that regard would constitute negligence. As observed, the jury has found that it was defendant's duty to install and maintain such devices.

We think the factory in which plaintiff was employed is clearly within the purview of the Nebraska Factory Act. Chapter 48, Compiled Statutes Nebraska 1929, section 48-401, describes the places to which the act shall be applicable as, "Every factory, mill, workshop, mercantile or mechanical establishment or other building where one or more persons are employed." Section 48-402 describes such places as "factories, mills or workshops, mercantile or mechanical establishments or other places." 

Section 48-403 provides: "If in any of the aforesaid places, any process is carried

on by which dust or fumes are caused, which may be inhaled by the persons employed therein, or if the air should become exhausted or impure, there shall be provided a fan or other such mechanical device as will substantially carry way all such dust or fumes or other impurities, subject to the approval of the department of labor."

Section 48-418 provides: "Every person operating a plant where machinery is used who shall violate any of the provisions of this article, shall be liable in damages to any person injured, as a result thereof."

Section 48-419 provides: "The continuance by any person in the employ of any such operator shall not be deemed an assumption of the risk of such employment."

It appears from the undisputed evidence that the place in which plaintiff was employed may properly be described as "a factory, mill, workshop, * * * or other building where one or more persons are employed," and it appears that there was carried on in this place a process by which dust and fumes were caused which might be inhaled by the person employed. In this state of the evidence, it was, we think, incumbent upon the defendant to show, if it could, that the installation of a fan or other device for carrying away the dust and fumes was not practicable. Accepting the plaintiff's evidence as true, and giving him the benefit of all inferences that may reasonably arise therefrom, as we must [Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Skaggs Safeway Stores v. Dunkle (C. C.A. 8) 49 F.(2d) 169], we are of the view that there was substantial evidence to sustain this allegation of negligence, and hence the court did not err in submitting this issue to the jury, nor in denying defendant's motion for a directed verdict.

The next charge of negligence submitted to the jury was the alleged failure of defendant to furnish plaintiff with a proper respirator or appliance to be worn over the mouth and nose to protect him from dangerous lead dust and fumes. This issue was submitted to the jury by the court's instructions, to which, as has already been observed, no exceptions were taken. Neither was there any request to withdraw this issue from the jury, nor was it alleged in defendant's motion for a directed verdict that there was no evidence tending to sustain this charge of negligence. The question, not having been presented to the lower court nor preserved by the record, cannot be urged here. Brown Sheet Iron & Steel Co. v. Will-cuts (C.C.A. 8) 45 F.(2d) 390; Federal Intermediate Credit Bank v. L'Herisson (C.C.A. 8) 33 F.(2d) 841; Bort v. E. H. McCutchen & Co. (C.C.A. 8) 187 F. 798; Arkansas Bridge Co. v. Kelly-Atkinson Const. Co. (C.C.A. 8) 282 F. 802. As the case must be reversed on other grounds, however, and this same question may again arise on the trial of the case, we shall consider it.

The appliance furnished plaintiff was one in common use in industries such as that of the defendant. It was of standard make. Plaintiff was directed to wear it all the time he was doing the "poking." It had filters that could be changed any time the plaintiff felt like it, and the air inhaled came through the filter. A witness for the plaintiff testified that "there were filters right there to use in the respirators so they could change as often as they wanted to." There were kept on hand at all times for the use of the men, including plaintiff, rubber clamps, or the part that fits up against the face, and the respirator, when placed on the face, fits closely around the nose and mouth. If the wearer had a long nose or a thin nose, it was adjustable so as to fit that. They were made principally by the American Optical Company, and used by the Universal Lead Company and companies of that type. There was no substantial evidence of any defect in the respirators furnished the plaintiff, nor was there any evidence that a better type of respirator was known to the craft, and, so far as appears, the respirators furnished were the best available. It appears, too, that these appliances had theretofore for many years adequately protected the employees. What was said by us in Phillips Petroleum Co. v. Manning, 81 F. (2d) 849, 852, is here apposite. We there said: "There is no evidence indicating that the appliance was obviously dangerous, and proof that it was continually used for a period of two years without any indication that it was defective or inadequate refutes any imputation of negligence in continuing its use."

In this condition of the evidence, the issue, we think, should not have been submitted to the jury. Grammer v. Mid-Continent Petroleum Corp. (C.C.A. 10) 71 F. (2d) 38; Pennsylvania Pulverizing Co. v. Butler (C.C.A. 3) 61 F.(2d) 311.

The third ground of negligence submitted to the jury was that involving the duty of defendant to caution or warn plaintiff as to the dangers arising from lead

poisoning. Defendant moved the court to withdraw that issue from the jury on the ground that the evidence showed that plaintiff was fully warned and that he apprehended the danger. This motion was overruled and defendant excepted. Was this error?

The sufficiency of caution, warning, or instruction of an employee, or its necessity, may depend upon a number of factors, including the age, intelligence, and experience of the employee, the nature of the danger, the character of the work to which the employee is assigned, and other circumstances. The court instructed the jury that if they should find that plaintiff's employment was, because of the presence of lead poisoning, "dangerous and that plaintiff was known to the defendant to be inexperienced in such work, and that defendant knew of the peril, or should have known of the peril to which plaintiff would be exposed in such work, and did not instruct or warn him of the danger connected with the work, or did not give him sufficient instruction therein, and if you further find from the evidence that the plaintiff, from inexperience, failed to appreciate the danger, if any, in connection with said work, and was injured in consequence thereof, and because of defendant's failure to instruct or warn him of such danger, or defendant's failure to give plaintiff sufficient instruction of the danger, and you further find from the evidence that plaintiff was not guilty of contributory negligence, then the defendant would be responsible for such injuries as the plaintiff received, if any, from such work."

At the time plaintiff entered defendant's employ, in 1933, he was about twenty-three years old; he was a graduate from an Omaha high school; and he had on a previous occasion, in the fall of 1930, worked for defendant for five or six weeks in this same class of work. When he began work for the defendant in June, 1933, he received a letter which he not only read but retained and produced at the trial. The letter bears date June 10, 1933, and is as follows:

"Being battery manufacturers—we use lead and desire here to advise you of its hazards.

"As you all know, lead (principally Lead Oxide) is apt to cause what is commonly known as 'Lead Poisoning' and while we have cautioned you from time to time to be careful with yourself in the handling of this material, we issue this new warning.

"While we have been in business for some 13 years, we have never yet had but one serious case and have never learned of any fatal cases in the Industry.

"It can be prevented by you but if you should be so unfortunate as to get it, our experience in the past 13 years has proven that it can be cleared up within a few weeks by conforming with the customary treatment.

"We are spending hundreds of dollars to prevent lead poisoning and to keep our men well but we again emphasize the importance of watching yourself, and plead for your cooperation.

"First: Avoid constipation—in other words, be sure you have a daily elimination. In case of severe constipation, Doctor Smith, our Minneapolis physician urges that you take an enema consisting of warm milk and molasses, in equal parts of two or three cupfuls each. In mild cases, we have been furnishing powdered magnesium oxide. Buttermilk and milk are recommended.

"Second: Avoid colds. They lower your resistance and frequently cause a congestion of the lungs. If you have a bad cold, remain at home and keep away from work. If your resistance is low, it will bring on a condition which will make it very easy for lead to attack you, so again we urge you to avoid colds.

"Third: Keep Clean. Wash your hands before eating and take a complete bath no less than once each week. Keep your fingernails clean. Completely change undercloth-ing no less than once each week. Wear the respirators we give you. If you haven't one ask for it if you feel your position in the factory requires it.

"Fourth: Brush your teeth every night with water and common table salt. Sprinkle salt on the brush and scrub the teeth, then rinse with water.

"Fifth: Liquor and lead positively will not mix. Do not drink intoxicating liquors.

"Sixth: The symptoms of lead poisoning frequently and commonly consist of cramps, constipation, and in the more advanced cases a bluish line on the gums just below the teeth. Lead poisoning can best be determined from blood tests and if you have any idea or suspicion that you may have lead poisoning come to us at once and we will send you to our doctor immediately. There will be no charge for this.

"Please Cooperate With Us.

"We not only have frequent blood tests but we supply tonics and other medicine

free of charge when necessary and therefore make it so easy that you will surely have no excuse for not cooperating with us. Report constipation and all illness to your foreman at once.

"We have earned a splendid reputation the last few years for keeping our employees well and free from lead poisoning and we want to continue this reputation but must have your cooperation. We can do it if you will cooperate."

As has been observed, plaintiff was neither young, inexperienced, illiterate, nor lacking in intelligence. By this letter he was warned that defendant used lead and that it desired to advise him of its hazards; that lead was apt to cause lead poisoning; that it was important for him to watch himself. He was then advised what to avoid, what precautions to take; was urged to report to his superior any suspicion he may have had of lead poisoning; was offered free medical advice and attention; and was particularly asked to co-operate with his employer in the matter of preventing any ill effects from contact with lead. In addition to this, he was furnished with a mask or respirator and was instructed by his immediate superior to wear it and to change the filters in the mask at least once a day; and he was given a tonic to take. His fellow workmen also used masks or respirators.

There was a great deal of dust where he was working; it would get on his face and hands, and he could see it in the air. He had his fingers taped up to keep them from getting cut, and he would remove this tape and that would leave a sort of oily, sticky substance, and he was furnished a tape soap that mechanics used, and he used that. He washed his hands before lunch and before going home. He would clean his fingernails when he got home by using nail soap. He changed his underclothing practically every other day because lead got over his clothes. He cleaned his teeth once or twice a day, and he did not use liquor in any way.

This notice gave him both warning and instruction, and with this notice, being of mature years and intelligent, he had the same knowledge relative to the danger attendant upon his occupation which his employer had, and this warning or instruction certainly gave him reasonable notice of the danger of his employment arising from lead poisoning. Not only did he understand the notice and instructions, but he claimed in his evidence to have heeded them to some extent at least. There is nothing in the evidence to indicate that defendant could have done anything more in warning and instructing plaintiff of this danger of his employment. With the knowledge imparted by this warning and these instructions, he must be held to have assumed the hazard and risk arising from lead poisoning, and we think the court should have withdrawn this issue from the jury because not sustained by substantial evidence. Grammer v. Mid-Continent Pet. Corp. (C.C.A. 10) 71 F.(2d) 38, 42; Pennsylvania Pulverizing Co. v. Butler (C.C.A. 3) 61 F.(2d) 311; Bohn Mfg. Co. v. Erickson (C.C.A. 8) 55 F. 943.

In Grammer v. Mid-Continent Petroleum Corporation, supra, the court considered a case involving a claim of occupational disease. In the course of the opinion in that case it is said: "If Grammer died of pneumoconiosis, and if his occupation had anything to do with it, it was because of the dust in which he worked. He knew the dust was present when he took the job and when he kept it year after year. He knew it was somewhat harmful to the lungs, for he was furnished with a respirator and told to wear it, and that its purpose was to keep the dust out of his mouth, nose, and lungs. The dust irritated the throat and coughing followed. He assumed the ordinary, known risks attendant upon inhaling dust-laden air. Butler v. Frazee, 211 U.S. 459, 29 S.Ct. 136, 53 L.Ed. 281. No more effective warning of danger could be given than by furnishing respirators and requiring them to be worn."

The use of the respirators had, as appears from the undisputed evidence, been adequate to prevent lead poisoning for a number of years in defendant's factory.

■■■ Defendant was not an insurer of the safety of the place in which plaintiff was working, but was required only to exercise ordinary care in furnishing him a safe place, and it was likewise required to exercise only ordinary care to warn and instruct him as to such dangers or hazards of his occupation as were not obvious.

The judgment appealed from is therefore reversed, and the cause remanded, with directions to grant defendant a new trial.